815 F.2d 1467
 55 USLW 2667
 Michael Dennis STRAUB, Plaintiff-Appellee,
v.
Geoffrey MONGE, as Sheriff of Sarasota County, Florida,
Defendant- Appellant.
Michael Dennis STRAUB, Plaintiff-Appellee,
v.
The CHAIRPERSON OF the SARASOTA COUNTY BOARD OF
COMMISSIONERS, Jim Hardcastle, the Sheriff of
Sarasota County, FL, et al., Defendants-
Appellants.
 No. 86-3312.
 United States Court of Appeals,
Eleventh Circuit.
 May 5, 1987.
 
 Nelson, Hesse, Cyril, Smith, Widman & Herb, Richard E. Nelson, F. Steven Herb, Karen E. Atkins, Sarasota, Fla., for defendant-appellant.
 Rahdert, Anderson & Richardson, George K. Rahdert, St. Petersburg, Fla., M. David Shapiro, Tampa, Fla., for plaintiff-appellee.
 Appeal from the United States District Court for the Middle District of Florida.
 Before HILL and HATCHETT, Circuit Judges, HENDERSON, Senior Circuit Judge.
 HATCHETT, Circuit Judge:
 
 
 1
 This case requires that we determine the scope of Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Finding that the district court correctly applied Bounds, we affirm.
 
 
 2
 On March 5, 1982, law enforcement officials in Sarasota County, Florida, arrested Michael Dennis Straub for robbery of the First Federal Bank of Fort Myers, Florida. Following his arrest, criminal charges were filed against him, and he was incarcerated in the Sarasota County Jail where he remained until his transfer to the Florida State Prison system in September, 1982. Because Straub had used his automobile in the bank robbery, a felony, the state of Florida began civil forfeiture proceedings against the automobile.[1]
 
 
 3
 In the criminal case, the state trial court found Straub indigent and appointed the public defender for Sarasota County to represent him on the criminal charges. As to the civil forfeiture matter, because Florida law prohibited representation by the public defender, he had no lawyer. During a hearing in the civil forfeiture case, Straub requested permission to use the county law library. For some unknown reason, the state trial court never ruled on Straub's request to use the law library.
 
 
 4
 While incarcerated in the Sarasota County Jail, Straub continued his efforts to get access to legal materials in order to assist his lawyer in the criminal case and to prepare to defend himself and his automobile in the civil forfeiture case. Jail officials told Straub that he would have to obtain a court order to gain access to a law library. The record further indicates that Straub attempted to have written requests for access to a library filed with the court in order to obtain such a court order but for unknown reasons, these written requests never reached the court. Eventually, Straub entered a nolo contendere plea to the robbery charge which resulted in a judgment of guilty and a sentence of incarceration. The automobile was forfeited to the state of Florida.
 
 PROCEEDINGS
 
 5
 Straub filed two cases in the district court pursuant to 42 U.S.C. Sec. 1983, seeking damages, injunctive relief, and attorney's fees.[2] In both actions, Straub alleged that Sarasota County officials had denied him access to the courts in violation of his right to due process of law as provided by the fourteenth amendment to the Constitution of the United States.
 
 
 6
 The county officials contend that Straub had no constitutional right to access to a law library or legal materials in the criminal case because his appointed counsel provided him with meaningful access to the courts. As to the civil forfeiture case, the county officials contend that Straub was not denied access to the courts because he could have obtained a court order which would have provided him with the right to visit the county law library. The county officials also contend that Straub was not indigent; therefore, he could have hired a lawyer. Some effort was made in the district court to show that certain inmates simply should not be allowed to use libraries.
 
 
 7
 The district court held that the policy requiring inmates to obtain a court order to gain access to legal materials was unconstitutional because the procedure itself required litigation. The district court characterized the county's procedure as "an unreasonable and unjustifiable catch-22 position of having to have access to the courts in order to obtain the legal materials necessary to show [an inmate] how to get access to the courts." As to the county's assertion that some detainees should not be allowed in a public library, the district court held that the burden should be on the county to obtain a court order preventing undesirable inmates from use of the library, rather than placing the burden on the inmates of seeking the court order. Rejecting all of the county officials' contentions, after a trial, the district court entered judgment for Straub in the amount of $3,000 plus costs and attorney's fees.
 
 
 8
 In this court, the county officials seek reversal of the district court's order arguing that Straub was not indigent and even if indigent, the county officials have qualified immunity foreclosing an award of damages.
 
 DISCUSSION
 
 9
 After a full hearing, the district court found, as did the state court, that during Straub's detention in the Sarasota County Jail, he was indigent.[3] We may not disturb this factual finding unless the record indicates that the district court was clearly erroneous. United States v. Koziy, 728 F.2d 1314 (11th Cir.), cert. denied, 469 U.S. 835, 105 S.Ct. 130, 83 L.Ed.2d 70 (1984). The district court was not clearly erroneous. Consequently, if Straub is indigent, and if a court order is required to seek a court order, then, obviously, Straub has been denied access to the courts. We could stop. We go on because the district court ruled that even if Straub were not indigent, he was still entitled to access to the courts through the use of a library or other legal materials furnished by the county.
 
 
 10
 The county officials rely on Wilson v. Zarhadnick, 534 F.2d 55, 57 (5th Cir.1976), in which the Fifth Circuit asked: "If a state prison inmate is not an indigent, if he has adequate financial resources with which to employ counsel of his own choice, is the state under a constitutional obligation to furnish the inmate with legal research material?" The Fifth Circuit answered that question in the negative. That was in 1976. In 1977, the United States Supreme Court decided Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Bounds held that the fundamental right of access to the courts requires that prison authorities assist inmates in the preparation and filing of meaningful legal papers by providing adequate libraries or adequate assistance from persons trained in the law. In this case, the county officials misinterpret Bounds as applying only to indigent inmates. A reading of Bounds is sufficient: "[O]ur decisions have consistently required States to shoulder affirmative obligations to assure all prisoners meaningful access to the courts." Bounds, 430 U.S. at 824, 97 S.Ct. at 1496 (emphasis added); see also Hooks v. Wainwright, 775 F.2d 1433, 1435 (11th Cir.1985). This statement, alone, explicitly rejects the contentions urged by the county officials. For sure the access issue has often arisen in situations where the inmates were indigent. The indigent will continue to be the most affected. But, as this case indicates, policies regarding library access may seriously affect an inmate who is not indigent. The state cannot force a person with financial means, who would otherwise not hire a lawyer, to hire a lawyer because of incarceration, any more than the state can deny access to an indigent. We hasten to add that we are not holding that an inmate with the financial means to hire a lawyer must be furnished a lawyer at state expense. We do not now speak of representation, but access. The state may not bar access to the courts no matter what form it utilizes.
 
 
 11
 "Under Bounds, the government is obligated to provide prisoners 'with adequate legal libraries or adequate assistance from persons trained in the law.' " Mann v. Smith, 796 F.2d 79, 83 (5th Cir.1986) (quoting Bounds, 430 U.S. at 828, 97 S.Ct. at 1498) (emphasis added). "The constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights.... Regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." Procunier v. Martinez, 416 U.S. 396, 419, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974). "Of what avail is it to the individual to arm him with a panoply of constitutional rights if, when he seeks to vindicate them, the courtroom can be hermetically sealed against him by a functionary who, by refusal or neglect impedes the filing of his papers?" Ryland v. Shapiro, 708 F.2d 967, 972 (5th Cir.1983) (quoting McCray v. Maryland, 456 F.2d 1, 6 (4th Cir.1972)). See also Harris v. Pate, 440 F.2d 315, 317 (7th Cir.1971) (prison authorities prohibited from interfering with right of access to courts).[4] "[T]he State owes to each individual that process which, in light of the values of a free society, can be characterized as due." Boddie v. State of Connecticut, 401 U.S. 371, 380, 91 S.Ct. 780, 787, 28 L.Ed.2d 113 (1971).
 
 
 12
 Bounds imposes an affirmative obligation upon the states to insure that "all prisoners" receive meaningful access to the courts and establishes no exception for non-indigent inmates. "[T]he right to a meaningful opportunity to be heard ... must be protected against denial by particular laws [and policies] that operate to jeopardize it for particular individuals." Boddie, 401 U.S. at 379-80, 91 S.Ct. at 786-87. In Cruz v. Hauck, 627 F.2d 710 (5th Cir.1980), the appellate court required the district court to determine whether all inmates at the jail had adequate access to the courts. See also, Hooten v. Jenne, III, 786 F.2d 692 (5th Cir.1986). Cruz held that all inmates must in fact have access to the courts as mandated by Bounds. 627 F.2d at 721. "All prisoners ... have court enforced access to legal research materials or assistance from persons trained in the law." Hawthorne v. Wells, 761 F.2d 1514, 1516 (11th Cir.1985) (noting Bounds, 430 U.S. at 828, 97 S.Ct. at 1498).
 
 
 13
 We also note that the right to meaningful access to the courts, although routinely presented in constitutional and civil rights actions, is likewise applicable to the civil forfeiture action against Straub. Recently, the Fifth Circuit, in Jackson v. Procunier, 789 F.2d 307, 311 (5th Cir.1986), rejected the proposition that "a prisoner's right of 'adequate, effective, and meaningful' access to the courts, as recognized by the Supreme Court in Bounds v. Smith, [footnote omitted] is limited to the presentation of constitutional, civil rights, and habeas corpus claims." The court held that "[r]ecognition of the constitutional right of access to the courts ... long precedes Bounds, and has from its inception been applied to civil as well as constitutional claims." Jackson, 789 F.2d at 311.[5]
 
 
 14
 We agree with the district court's ruling regarding immunity. The right in this case is well established.
 
 
 15
 Accordingly, the district court order is affirmed.
 
 
 16
 AFFIRMED.
 
 HILL, Circuit Judge, specially concurring:
 
 17
 Once we determined that the district court's determination of indigency was not clearly erroneous, we needed only to decide whether an indigent inmate, faced with defending himself in a civil forfeiture action brought by the state, who is not assisted by counsel in that defense, may be required to seek a court order before being allowed to use a law library. Because the majority opinion responds negatively to that query, I do not dissent. However, I am unable to concur in the majority's opinion.
 
 
 18
 By addressing the issue of access to nonindigents, in a case where the prisoner was found indigent, the majority unnecessarily expands the holding of this case. The district court supported its opinion on alternative grounds out of an abundance of caution. Had we found the finding of indigency clearly erroneous, it would have been necessary to address the alternative holding. We did not so find, thus our task is finished. We need not address issues based on a hypothetical situation.
 
 
 19
 I would like to dismiss the second part of the majority opinion as harmless dicta. However, the majority does not treat it as such, and I am concerned that it will not be read as such. Thus, I feel compelled to write separately, and point out that the majority expands Bounds' holding in two important ways, neither of which is justified by the facts of this case.
 
 
 20
 First, the majority flatly overrules Wilson v. Zarhadnick, 534 F.2d 55 (5th Cir.1976). It claims that this action is required by a simple reading of Bounds. I do not find the issue so clear. It is true that Bounds, and subsequent decisions in the circuit courts, have required that the states "assure all prisoners meaningful access to the courts." Bounds, 430 U.S. at 824, 97 S.Ct. at 1496 (emphasis added). See also Hawthorne v. Wells, 761 F.2d 1514 (11th Cir.1985); Cruz v. Hauck, 627 F.2d 710 (5th Cir.1980). However, when the majority states, "the state cannot force a person with financial means, who would otherwise not hire a lawyer, to hire a lawyer because of incarceration, any more than the state can deny access to an indigent," it breaks new ground. This proposition does not relate to the words "all prisoners." In truth, it redefines "meaningful access." According to the majority opinion, not only must a prisoner have access to the courts, he must also have the choice between hiring an attorney and proceeding pro se--the latter at state expense.
 
 
 21
 The economic and logistical problems imposed by the majority's expansion of Bounds should not be taken lightly. While it may not be difficult for a federal prison with a large library to provide all inmates with access to it, many state-run jails, such as the one that confined Mr. Straub, are not equipped with such facilities. Under the majority view, state authorities must either finance a complete library or surmount the logistical and security related problems of transporting inmates to public libraries.
 
 
 22
 These considerations have been taken into account by other federal courts when limiting Bounds' impact in a slightly different context. At least three circuit courts have held that where an indigent criminal defendant refuses court-appointed counsel, the state does not have an obligation to give him access to a law library so that he may proceed pro se. In so holding, the Fourth Circuit Court of Appeals explained, "We do not read Bounds to give an option to the prisoner as to the form in which he elects to obtain legal assistance." United States v. Chatman, 584 F.2d 1358 (4th Cir.1978) (emphasis in original). See also United States ex rel. George v. Lane, 718 F.2d 226 (7th Cir.1983); United States v. Wilson, 690 F.2d 1267 (9th Cir.1982); cf. Hooks v. Wainwright, 775 F.2d 1433 (11th Cir.1985) (Bounds does not require that the state provide both access to a law library and assistance from "persons trained in the law").
 
 
 23
 The question here is also whether "meaningful access" means that the state must bear the burden of an incarcerated inmates "choice" to proceed pro se. Allowing economics into the equation is not an impermissible step. The Supreme Court in Bounds was careful to note:
 
 
 24
 This is not to say the economic factors may not be considered, for example, in choosing the methods used to provide meaningful access. But the cost of protecting a constitutional right cannot justify its total denial. Thus, neither the availability of jailhouse lawyers nor the necessity for affirmative state action is dispositive of respondents's claims. The inquiry is rather whether law libraries or other forms of legal assistance are needed to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.
 
 
 25
 With this in mind, I submit that "meaningful access" need not be interpreted as broadly as the majority suggests. In fact, Bounds may be interpreted to mean that states are required to fill in the gaps, and provide access to those prisoners who would otherwise not have access, thus making sure that "all" prisoners do have access. Such an interpretation of Bounds is not as implausible as the majority opinion implies. As we noted in Hooks v. Wainwright:
 
 
 26
 Bounds was a limited decision. At the time it was decided, Bounds was the culmination of a series of cases holding that imprisonment should not deprive persons of access to courts....
 
 
 27
 All of these decisions simply removed barriers to court access that imprisonment or indigency erected. They in effect tended to place prisoners in the same position as nonprisoners and indigent prisoners in the same position as nonindigent prisoners. Having held that inmates can represent themselves, if able to do so, and can help other inmates who are not so able, it was but a small step to hold that such able inmates, who presumably would have access to libraries but for imprisonment, must be given access to libraries in prison, or access to people who have access to libraries.
 
 
 28
 Id., 775 F.2d at 1436.
 
 
 29
 The Supreme Court decision in Bounds, then, may be seen as an equalizer. It requires that access be given where none was available. This does not mean, necessarily, that a prisoner with ample financial resources to retain a lawyer has insufficient access to the courts unless he or she also has access to a law library. The state may not yet have to provide everyone sued or indicted with a full set of law books in case he or she might wish to proceed pro se.[1] The simple fact is that the Bounds court did not address the indigency issue, and neither should we, until we are presented with a case which contains the necessary factual predicate for overruling Wilson.
 
 
 30
 Second, I object to the majority's opinion because it cavalierly expands the types of legal problems for which access to court system must be available. In Bounds, and every prior Supreme Court case regarding court access, the court only struck down those barriers which kept indigent prisoners from filing habeas corpus petitions, suits challenging the conditions of their confinement, or civil rights claims.[2] In the Bounds opinion itself, the Supreme Court noted that the right to access cases focus mainly on constitutional and civil rights claims. The court stated:
 
 
 31
 [I]n this case, we are concerned in large part with original actions seeking new trials, release from confinement, or vindication of fundamental civil rights. Rather than presenting claims that have been passed on by two courts, they frequently raise heretofore unlitigated issues. As this court has "constantly emphasized," habeas corpus and civil rights actions are of "fundamental importance ... in our constitutional scheme" because they directly protect our most valued rights. (citations omitted).
 
 
 32
 Bounds, 430 U.S. at 827, 97 S.Ct. at 1498.
 
 
 33
 The former Fifth Circuit was never asked to apply Bounds outside this narrow range of cases.[3] In Cruz v. Hauck, 627 F.2d 710, 721 (5th Cir.1982), the former Fifth Circuit cited Bounds for the proposition that all inmates must have access to the courts for the filing of "federal habeas corpus or state or federal civil rights actions." (citing Bounds at n. 17). In Bonner v. City of Prichard, Alabama, 661 F.2d 1206 (11th Cir.1981), this court similarly noted:
 
 
 34
 "prisoners have a constitutional right to 'adequate, effective and meaningful' access to the courts. See Bounds v. Smith, 430 U.S. 817, 822 [97 S.Ct. 1491, 1495, 52 L.Ed.2d 72] (1977) [additional citations omitted]. This right is well established both in habeas corpus actions ... and in civil rights cases...." [Additional citations omitted].
 
 
 35
 Id. 661 F.2d at 1212. In another recent case, we noted in dicta that many procedural steps have been taken to ensure access to the courts for "the benefit of the prisoner who in a custodial setting has been deprived of a constitutional right." Hawthorne v. Wells, 761 F.2d 1514, 1516 (11th Cir.1985). Indeed, the new Fifth Circuit, in discussing the Bounds decision, explained:
 
 
 36
 In Bounds the court held that prisoners have a constitutional right of adequate, effective and meaningful access to the courts.... Apparently, the right is not extended to all legal filings, but applies only to presentation of constitutional claims, such as civil rights complaints and state and federal habeas petitions. Id. [Bounds ] at 825, 827-28 and n. 17 [97 S.Ct. at 1496, 1497-98 and n. 17].
 
 
 37
 Morrow v. Harwell, 768 F.2d 619 (5th Cir.1985).[4] To apply Bounds outside this context is a bold extension of the principles expounded by the Supreme Court in its right to access decisions.
 
 
 38
 As the majority rightly notes, the New Fifth Circuit recently dismissed Morrow's interpretation of Bounds as "obiter dicta," and held that "although Bounds did not discuss civil suits," the Fifth Circuit would henceforth apply Bounds to prisoners involved in civil cases unrelated to their confinement. Jackson v. Procunier, 789 F.2d 307 (5th Cir.1986). Finding this an admirable step, today the majority adopts the holding of Procunier for the Eleventh Circuit.This goes well beyond what is necessary to decide this case.
 
 
 39
 Some extension of Bounds is necessary in order to support the district court's judgment regarding Mr. Straub's right to access to the courts, for his case falls outside the usual Bounds context. We are not dealing with a prisoner who wants to draft a civil rights complaint or a habeas petition. Instead, we are dealing with an indigent pretrial detainee who was faced with defending himself in a civil forfeiture action brought by the state. However, we may extend Bounds to cover Mr. Straub's situation, without adopting the holding of Procunier, by limiting our holding to the facts presented by Mr. Straub's case.
 
 
 40
 This limited extension of Bounds is a smaller step, and is fully justified by the facts of this case and prior precedent. A defendant in a civil forfeiture proceeding and a habeas corpus petitioner (or civil rights complainant challenging the conditions of confinement) both have the state as their adversary. Both must have meaningful access to the court system if they are to protect their interests--liberty or property--from continued harm. The Supreme Court has already held that the exclusionary rule, which normally only relates to criminal matters, must apply in civil forfeiture proceedings. Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). This extra protection was considered necessary because of the quasi-criminal nature of such proceedings. Prisoners who file post-conviction claims for relief are also challenging criminal proceedings. Thus, Mr. Straub's case has much in common with the type of constitutional and civil rights cases that the Supreme Court was concerned with in Bounds, and application of the principles espoused therein to Mr. Straub is justified. I do not wish to apply Bounds to every conceivable legal problem, whether the inmate is proceeding as a plaintiff or a defendant; I see no limiting factor in the majority opinion.
 
 
 41
 Of course, in a certain sense, Mr. Straub was guaranteed "access" to court because he was a defendant. In fact, he was being haled into court whether he wanted to be there or not. To this extent his predicament was analytically distinct from that of pro se plaintiffs, who are the types of litigants dealt with in the Bounds line of cases. Yet, as expressed above, Mr. Straub was faced with the same adversary. In this type of case, "meaningful access" must mean the ability to prepare oneself when one cannot afford counsel. Requiring an inmate to obtain a court order before being allowed to use a library, even where he must use a public library, is an impermissible restriction on that right. To the extent the majority so holds, I decline to dissent: but we ought not go further beyond Bounds.
 
 
 42
 I do not intend that my concurrence be read as a prediction of how I would decide the issues discussed above, were they appropriately presented in a case with the necessary factual predicate. I write merely to explain how the majority opinion goes far beyond Bounds in two distinct respects, in a situation where we are not called upon to address these issues. The second part of the majority opinion can easily be read to give every prisoner the right to access to a law library for every perceived legal problem, whether or not he can afford legal counsel.[5] In this I cannot concur.
 
 
 
 [1]
 Straub was personally named as a defendant in the civil forfeiture proceedings
 
 
 [2]
 In the first case, the defendants were Sheriff Jim Hardcastle and the state of Florida. The state of Florida was dismissed. In the second case, the defendants are Sheriff Jim Hardcastle, Max Frimberger, Captain of Sarasota County Jail, and the chairperson of the Sarasota County Board of County Commissioners
 
 
 [3]
 The state trial court found Straub indigent in the criminal case
 
 
 [4]
 Moreover, Florida law recognizes the affirmative duty placed on the state to provide affirmative assistance to inmates in their efforts to acquire meaningful access to the courts:
 All citizens in our state are also guaranteed access to our courts by article 1, section 21, Florida Constitution (1968). Although it is not necessary for us to provide affirmative assistance in order to ensure meaningful access to the courts to our citizens, as it is necessary for us to do for those incarcerated in our state prison system, Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), we should not place any unnecessary restrictions upon that right.
 The Florida Bar v. Brumbaugh, 355 So.2d 1186, 1192 (Fla.1978) (emphasis added).
 
 
 [5]
 The court in Jackson recalled that
 in Chambers v. Baltimore & Ohio Railroad Co., [footnote omitted] the Supreme Court recognized this right of access in the context of a diversity tort suit, founding the right on the privileges and immunities clause, and stating: 'The right to sue and defend in the courts is the alternative of force. In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship ... granted and protected by the federal constitution.' [Footnote omitted.]
 Jackson, 789 F.2d at 311 (quoting Chambers v. Baltimore & Ohio Railroad Co., 207 U.S. 142, 148, 28 S.Ct. 34, 35, 52 L.Ed. 143 (1907)).
 
 
 [1]
 Some restrictions on access to the court system are impermissible even though the affected prisoner already has an attorney. For example, in Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), the Supreme Court struck down a California regulation barring law students and paralegals, who were employed by the inmates' attorneys, from visiting the prisoners. A regulation inhibiting private legal counsel from effectively assisting prisoners carries very little justification. However, invalidating such an unjustified restriction is a far cry from requiring that the state provide all inmates with a library in all instances
 
 
 [2]
 In Ex parte Hull, 312 U.S. 546, 549, 61 S.Ct. 640, 641, 85 L.Ed. 1034 (1941), the court struck down a regulation prohibiting the filing of habeas corpus petitions until the parole boards "legal investigator" had determined that they were "properly drawn." In Griffin v. Illinois, 351 U.S. 12, 16-20, 76 S.Ct. 585, 589-91, 100 L.Ed. 891 (1956), the court held that trial records must be provided to inmates unable to pay for them. Burns v. Ohio, 360 U.S. 252, 257-58, 79 S.Ct. 1164, 1168, 3 L.Ed.2d 1209 (1959), held that indigent prisoners must be permitted to file appeals in habeas corpus petitions without paying docket fees. Johnson v. Avery, 393 U.S. 483, 490, 89 S.Ct. 747, 751, 21 L.Ed.2d 718 (1969), invalidated prison regulations which prohibited inmates from assisting one another with habeas corpus petitions. In Younger v. Gilmore, the Supreme Court affirmed a three-judge district court opinion invalidating California prison regulation which restricted prisoners' access to legal books. However, this case also arose in the context of allowing inmates to draft habeas petitions and civil rights claims. Gilmore v. Lynch, 319 F.Supp. 105, 110 (N.D.Cal.1970), aff'd sub nom., Younger v. Gilmore, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971) (per curiam). In Wolff v. McDonnell, 418 U.S. 539, 578-80, 94 S.Ct. 2963, 2985-86, 41 L.Ed.2d 935 (1974), the Supreme Court extended Johnson v. Avery to civil rights actions, holding that prisoners must be allowed to assist each other in drafting civil rights complaints, as well as habeas petitions
 
 
 [3]
 The former Fifth Circuit did address the issue in a few pre-Bounds decisions. In one, Andrade v. Hauck, 452 F.2d 1071, 1072 (5th Cir.1971), we held that "every prisoner has a constitutional right of access to the courts to present any complaint that he might have concerning his confinement." The court did not attempt to define the parameters of meaningful access. In another decision, handed down one week before Bounds, we concluded that prisoners must be allowed to render each other assistance in legal matters "including but not limited to divorce, and small civil claims." Corpus v. Estelle, 551 F.2d 68, 70 (1977). Although Corpus did apply the "meaningful access" concept to the civil arena, neither of these cases addressed the extent to which the state must finance inmates' "meaningful access" to the courts
 
 
 [4]
 See also Hooten v. Jenne, 786 F.2d 692 (5th Cir.1986) (applies Bounds in civil rights context); and Mann v. Smith, 796 F.2d 79 (5th Cir.1986) (applies Bounds to prisoner's civil rights claim). The panel in Mann aptly described the nature of the beast when it stated:
 As we pointed out in Morrow, the principles stated in Bounds "suffer for lack of internal definition and prove far easier to state than to apply," perhaps because they have no clear textual footing in the Constitution. 768 F.2d at 623. Bounds is vague about exactly what kinds of claims by inmates trigger the "right to access" to the courts, how long a person must be detained before the right is triggered, and what level of legal assistance is required to protect the right.
 Id. 796 F.2d at 84.
 
 
 [5]
 As we noted in Corpus v. Estelle, 551 F.2d 68 (5th Cir.1977), programs which provide meaningful legal assistance to inmates beyond that which is required by law are to be commended. I object only to the notion that states are required to finance a legal library capable of giving every prisoner "meaningful access to court" for every perceived legal problem, whether or not a given prisoner can afford an attorney