**Richard R. DATZ, Plaintiff,**

**v.**

**Sheriff Bill HUTSON, Major James C. Burns, III, Deputy Christopher P. Smith, Lieutenant Wayne T. Whitelaw, Lieutenant James B. Apple, Captain Ezekiel J. Brown, Cobb County Circuit Defenders Office, and Cobb County Board of Commissioners, Defendants.**

**Civ. No. 1:90–CV–1179.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 24, 1992.

Richard R. Datz, pro se.

Jerry L. Gentry, Office of Cobb County Atty., Law Dept., Marietta, Ga., for defendants.

## ORDER

CARNES, District Judge.

This case is presently before the Court on the Plaintiff's Motion for a Court Order [22–1], the Defendants' Motion for a Protective Order [23–1], the Plaintiff's Motion for a Free Transcript [24–1], the Plaintiff's Motion for a Court Order [26–1], the Plaintiff's Motion for Partial Summary Judgment [29–1], the Defendants' Motion to Dismiss [32–1], the Defendants' Alternative Motion for Summary Judgment [32–2], the Defendants' Motion for a Protective Order [33–1], and the Plaintiff's Motion for Additional Discovery [42–1]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that Defendants' Motion for Summary Judgment should be granted and all other motions should be denied as moot.

## BACKGROUND

Based on the parties' statements of undisputed material facts and responses thereto, viewing all evidence and factual inferences in a light most favorable to the non-moving party, the following facts emerge as undisputed:[1]

1. Plaintiff, Richard Ronald Datz, Jr. ("Datz"), was incarcerated at the Cobb County Adult Detention Center for various periods of time between 1989 and 1991.

2. On December 18, 1989 Datz filed an application for appointment of counsel with a certificate of financial resources indicating that he was indigent.

3. Plaintiff was represented by paid counsel, Thomas J. Huff, during the criminal proceedings against him in the Superior Court of Cobb County.

4. Plaintiff was admitted to the Cobb County Adult Detention Center infirmary complaining of back pain. He was released after signing a medical release from the infirmary.

5. The Cobb County Detention Center opened a law library for inmates use on May 1, 1990.

On May 31, 1990 Plaintiff filed this action pursuant to 42 U.S.C. § 1983 against Cobb County Sheriff Bill Hutson, Major Burns, Deputy Smith, Lieutenant Whitelaw, Lieutenant Apple, Captain Brown, the Cobb County Circuit Defender's Office, and the Cobb County Board of Commissioners. Plaintiff alleges that: (1) he was denied access to the courts due to the absence of a law library at the detention center, (2) he was not provided with legal representation by the Cobb County Defender's Office despite being indigent, (3) he was denied the "right to refuse being bonded on a criminal charge," (4) he was denied adequate sleeping arrangements, (5) the use of waist chains by detention center personnel to secure him while in a holding cell in the courthouse constituted cruel and unusual punishment, and (6) he was denied prescribed medication and treatment at the detention center infirmary.

Plaintiff has subsequently filed several discovery motions and a motion for partial summary judgment. Defendants responded to Plaintiff's motion for partial summary judgment and also filed their own motion to dismiss or, alternatively, for summary judgment.[2]

## DISCUSSION

### A. The Standard for Summary Judgment

Summary judgment is not properly viewed as a device that the trial court may,

---

1. It is difficult for the Court to determine what material facts are disputed by the Plaintiff, as he did not comply with Local Rule 220–5(b)(2). Instead of responding to each of the movant's numbered material facts, Plaintiff's Objections and Responses to Defendants' Statement of Material Facts to Which No Genuine Issue Exists [35–1] consists largely of a restatement of and expansion on the allegations made in his complaint, without regard for the numbering and content of Defendants' statements of fact.

2. As the Court has considered information outside the pleadings in deciding this matter, it will treat the motion as one for summary judgment and dispose of it as provided in Rule 56. FED. R.CIV.P. 12(b).

in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322-23, 106 S.Ct. at 2552.

The movant bears the initial responsibility of asserting the basis for his motion. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Apcoa, Inc. v. Fidelity National Bank,* 906 F.2d 610, 611 (11th Cir.1990). However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely " 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleading" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553. While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A fact is material when it is identified by the controlling substantive law as an essential element of the non-moving party's case. *Id.* at 248, 106 S.Ct. at 2510. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249-50, 106 S.Ct. at 2511. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " [3] *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson,* 477 U.S. at 249-50, 106 S.Ct. at 2511. Thus, to survive a motion for summary judgment, the non-moving party must come forward with specific evidence of *every* element material to that party's case so as to create a genuine issue for trial.

### 1. Monell *liability*

If a plaintiff seeks damages directly from a municipality or from a government official in that person's official capacity (*i.e.,* if the money is to be paid from the municipal treasury), it is well established that liability under § 1983 will exist "only when the deprivation at issue was undertaken pursuant to city 'custom' or 'policy,' and not simply on the basis of *respondeat superior.*" *Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1479 (11th Cir.1991); *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2038, 56 L.Ed.2d 611 (1978). Thus, " 'recovery from a municipality is limited to acts that are, properly speaking, acts "of the municipality"—that is, acts which the municipality has officially sanctioned or ordered.' " *Brown,* 923 F.2d at 1479 (quoting *Mandel v. Doe,* 888 F.2d 783, 791 (11th

**3.** This standard mirrors the standard for a judgment as a matter of law (previously called a directed verdict) at trial. The question under each is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 250-52, 106 S.Ct. at 2511-12.

Cir.1989)). "Municipal acts" include decisions made by the municipality's official legislative body in formally adopted policies, acts of individual policymaking officials, or pervasive municipal custom "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 1480–81 (quoting *St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988)).

### 2. *Qualified immunity*

 If a plaintiff seeks damages from a government official in that official's individual capacity (*i.e.,* the damages are to be paid by the individual officer or the government through an indemnification policy), the official may raise the affirmative defense of qualified immunity. When a qualified immunity defense is raised, the official is "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Supreme Court has observed that "[a]s the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). In order to withstand a motion for summary judgment on the basis of qualified immunity, a plaintiff must produce sufficient competent evidence to at least raise the issue of whether a reasonable person in the position of the defendant would have known that his actions violated the plaintiff's clearly established constitutional or statutory rights. *Peppers v. Coates,* 887 F.2d 1493, 1498 (11th Cir.1989). Thus, government officials are entitled to immunity as long as their actions could reasonably have been thought consistent with the rights that they are alleged to have violated. *Id.*

### B. Plaintiff's claims

It is difficult for the Court to determine exactly what claims Plaintiff is making against which Defendants and in what capacity they are being sued. Plaintiff, acting *pro se,* named the above persons and organizations generally as Defendants in his complaint and made a series of allegations, from which the Court has extracted the six claims specified above. Defendants have essentially argued that summary judgment is appropriate because Plaintiff has not shown that a genuine issue of material fact exists that they deprived him of any federal constitutional or statutory right, as required to state a cause of action under § 1983. Alternatively, Defendants argue that even if Plaintiff has made such a showing, they are still entitled to judgment as a matter of law because Plaintiff has not shown that any violation by the municipal defendants amounted to a policy or custom or that any violation by individual defendants infringed on clearly established statutory or constitutional rights of which a reasonable person would have known.

### 1. *Denial of access to the courts*

Plaintiff asserts that "Defendants are violating access to the court standards as set forth in *Straub v. Monge,*" 815 F.2d 1467 (11th Cir.), *cert. denied,* 484 U.S. 946, 108 S.Ct. 336, 98 L.Ed.2d 363 (1987). (Compl. at 4). In *Straub,* the Eleventh Circuit Court of Appeals held that the Supreme Court decision in *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), imposed "an affirmative obligation upon the states to insure that 'all prisoners' receive meaningful access to the courts" including "court enforced access to legal research materials or assistance from persons trained in the law." 815 F.2d at 1470. In his request for relief, Plaintiff asks that "Defendants and agents under their authority comply with the access to the courts standard that has been set in *Straub v. Monge* and that a law library be installed for inmates use." (Compl.) [4]

---

**4.** Plaintiff also seeks monetary damages generally from the Defendants. However, as Plaintiff does not specify the monetary amount that he

seeks on each individual claim, the Court will treat his denial of access claim as one that seeks

■ The Court finds that Plaintiff's denial of access to the courts claim is moot. Plaintiff's complaint was signed on April 18, 1990. It is undisputed that on May 1, 1990 an extensive law library for inmates' use was opened at the Cobb County Detention Center. (Def.'s Stmnt. of Mat. Facts ¶ 2, Pl.'s Objecs. and Resps. at ¶ 5). As it appears to the Court that the Defendants are now complying with *Straub* and Plaintiff has received the relief that he requested, the Court grants Defendants' motion for summary judgment on this claim.[5]

### 2. *Denial of counsel*

■ Plaintiff was arrested on November 3, 1989. (Compl. at 4). On December 18, 1989 Plaintiff filed an application for appointment of counsel with a certificate of financial resources indicating that he had only 25 cents. (Def.'s Stmnt. of Mat. Facts ¶ 3). In his complaint Plaintiff alleges that, as of March 1990, he still had not been provided with a court-appointed attorney despite numerous requests for one.[6] (Compl. at 4). Plaintiff has named the Cobb County Circuit Defenders Office as a Defendant, apparently alleging that the office violated his constitutional rights by not providing him with an attorney at no expense for his state criminal trial.

In order for a claim to be valid under § 1983, it must allege that a constitutional or statutory violation was committed "under color of state law." 42 U.S.C. § 1983. In *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), the Supreme Court addressed a situation in which a plaintiff asserted a § 1983 claim

against a county public defender. The Court observed that, although the public defender was employed by the county, "a defense lawyer best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing 'the undivided interests of his client.' This is essentially a private function, traditionally filled by retained counsel, for which state office and authority are not needed." *Id.* at 318–19, 102 S.Ct. at 450. The Court went on to hold that a county public defender, acting as counsel in a criminal case, does not act under color of state law for § 1983 purposes. *Id.* at 325, 102 S.Ct. at 453. *See also Slavin v. Curry*, 574 F.2d 1256, 1265 (5th Cir.1978) (dismissal of § 1983 claim against public defender appropriate because no state action was involved).[7]

The Court finds this reasoning persuasive in the present situation. The Cobb County Circuit Defenders Office performs the essentially private function of representing criminal defendants. Thus, the Court holds that the office was not acting under color of state law and that Plaintiff has failed to state a claim under § 1983.

■ Moreover, even assuming that the office was acting under color of state law, Plaintiff has not alleged that the actions in this case constitute a "policy or custom" of the office sufficient to establish municipal liability under *Monell.* At most, the facts plead by Plaintiff amount to an allegation that the office acted negligently. The Court finds no evidence in the pleadings that an official policy of the office was the

---

only the above-mentioned relief (*i.e.,* the installation of and access to a law library).

**5.** Plaintiff alleges in his amended complaint that the inmate's law library is "for the use of criminal proceedings and not civil proceedings." (Am. Compl. ¶ 10). It is apparent to the Court that such a limitation would not comply with this circuit's access to the courts standard. *See Straub v. Monge*, 815 F.2d at 1470 (the constitutional right of access to the courts applies to civil as well as constitutional claims); *Jackson v. Procunier*, 789 F.2d 307, 311 (5th Cir.1986) ("reasonable access to the courts must include access in general civil legal matter including but not limited to divorce and small claims"). To

the extent that Defendants are not complying with this standard, they are ordered to do so.

**6.** It is unclear based on the record whether Plaintiff was in custody this entire time. Defendants allege that their records indicate that he was on bond, while Plaintiff alleges that he was in jail. For purposes of summary judgment, we accept Plaintiff's version of the facts.

**7.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

"moving force of the constitutional violation" as required in order to establish the liability of a government body under § 1983. *Dodson,* 454 U.S. at 326, 102 S.Ct. at 454.

### 3. *Denial of the right to refuse bond*

Plaintiff alleges that he was "denied the right to refuse being bonded on a criminal charge." (Compl. at 5). The factual basis of this claim is not entirely clear to the Court. Apparently Plaintiff is complaining that he was not allowed to rescind his bond. (Compl.).

Regardless of the exact factual nature of this claim, it is apparent to the Court that it does not state a valid claim under § 1983. The federal bail statute, 18 U.S.C. §§ 3141–3150, would not have come into play, as Plaintiff was detained for a state criminal violation. Plaintiff has not directed the Court's attention to any constitutional provision that would provide him a federal constitutional right to rescind his bond. It appears to the Court that any rights Plaintiff had regarding bond would be founded on Georgia state statutory law. *See* GA. CODE ANN. §§ 17–6–1 to 17–6–18. Thus, Plaintiff has not alleged a violation of a federal statutory or constitutional right and summary judgment is appropriate on this claim.

### 4. *Cruel and unusual punishment claims*

The remainder of Plaintiff's claims involve allegations that various conditions and practices at the detention center violate his rights. Again, Plaintiff does not state the legal basis for these claims, but it appears to the Court that they are based on the Eighth Amendment prohibition on cruel and unusual punishment.[8]

The Eighth Amendment prohibits punishment that involves the unnecessary and wanton infliction of pain or the imposition of pain totally without penological justification. *Evans v. Dugger,* 908 F.2d 801, 803 (11th Cir.1990). This prohibition applies both to punishment that has been judicially imposed and to "punishment" that results from the conditions of confinement. *Id.* Conduct that does not purport to be punishment, however, violates the constitution only when it involves more than an ordinary lack of due care for a prisoner's interests or safety. *Id.* The Supreme Court has observed that "conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981).

#### a. denial of adequate sleeping arrangements

Plaintiff alleges that he was denied "adequate and proper sleeping arrangements." (Compl. at 5). Apparently, this claim is based on Plaintiff's allegations that he was forced to sleep on the floor at times. (Compl.). Defendants have apparently agreed that, when the jail is crowded, every prisoner does not receive a bunk or cot on which to sleep. However, Defendants have produced competent evidence showing that no prisoner actually sleeps directly "on the floor," but rather prisoners are given mattresses, linens, and pillows to be put on the floor when bunks and cots

---

**8.** The Court is aware that the Eighth Amendment may not apply to the entire period of time during which Plaintiff claims the violations occurred. The Eighth Amendment does not come into play until a prisoner has been convicted because, prior to that time, the individual is considered a "pre-trial detainee." *Ingraham v. Wright,* 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 1412 n. 40, 51 L.Ed.2d 711 (1977). Plaintiff was arrested in November 1989 and not convicted of the charge on which he was arrested until June 1990. However, because it appears that Plaintiff was detained due to a hold for the Pardon and Parole Board being placed on him, it appears to the Court that the Eighth Amendment still provides the proper standard to use in evaluating Plaintiff's claims. Moreover, even assuming Plaintiff was a pre-trial detainee for part of the relevant period, it is clear that pre-trial detainees are protected by the Fourteenth Amendment Due Process Clause at least to the extent that the Eighth Amendment protects convicted prisoners. *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 n. 5 (11th Cir. 1985).

are unavailable. (Def.'s Answers to Pl.'s First Interrogs. ¶ 1).[9]

The Court holds that summary judgment is appropriate on this claim. Even assuming that Plaintiff's allegation is true (*i.e.*, assuming that Plaintiff did have to sleep on a mattress placed on the floor), the Court concludes that Plaintiff has failed to state a constitutional violation as such treatment is not cruel or unusual, nor does it show more than an ordinary lack of due care for a prisoner's interests or safety. *See, e.g., Mann v. Smith*, 796 F.2d 79, 85 (5th Cir. 1986) (holding that Plaintiff's assertion that requiring pretrial detainees to sleep on mattresses placed on the floor is unconstitutional was meritless because Plaintiff "has cited no case holding that the Constitution requires elevated beds for prisoners, and we know of no source for such a right").

### b. use of waist chains

Plaintiff alleges that the use of waist chains to secure prisoners while they are waiting in a holding cell to be taken into court violates his constitutional rights.[10] (Am. Compl. ¶ 12). In response to this claim, Defendants produced an affidavit signed by Deputy Charles O. Sanger of the Cobb County Sheriff's Department, stating that the current policy of the department is to keep prisoners secured by waist chains at all times when they are taken from the detention center to the courthouse annex for court appearances. (Sanger Aff. ¶ 4). Due to limited personnel and the number of different locations at the courthouse to which prisoners must be moved, the chains are not taken off until the prisoners are returned to the detention center. *Id.*

As the Supreme Court has observed, the central goal of corrections officials is to ensure the safety of inmates, corrections personnel, and the general public. *Bell v. Wolfish*, 441 U.S. 520, 546–47, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). In *Wolfish*, the Court emphasized that courts must give great deference to the judgment of corrections officials in the adoption and execution of policies that in their judgment are needed to preserve internal order and maintain security. *Id.* at 547, 99 S.Ct. at 1878.

In *Fulford v. King*, 692 F.2d 11 (5th Cir.1982), the Fifth Circuit Court of Appeals addressed a § 1983 plaintiff's claim that use of a device that fit over handcuffs to prevent them from being picked constituted cruel and unusual punishment because it forced prisoners' arms to be held in an unnatural position and caused them to become numb. The court observed that the Eighth Amendment prohibits infliction of pain that is "totally without penological justification." *Id.* at 14. The court held, however, that use of the device when prisoners were transferred outside the prison was "justified by the greater risk of escape when prisoners are outside the institution and the reduced number of guards available to oversee the prisoners during those journeys." *Id.* Thus, use of the device was not without penological justification and did not violate the Eighth Amendment. *Id.* *See also Jackson v. Cain*, 864 F.2d 1235, 1243–44 (5th · Cir.1989) (upholding grant of summary judgment despite fact that use of handcuffs caused permanent injury to prisoner's wrist because was no allegation that pain was caused deliberately or by type of handcuff not customarily used on prisoners outside prison); *Spain v. Procunier*, 600 F.2d 189, 198 (9th Cir.1979) ("The movement of prisoners outside the prison inherently presents a serious threat to their guards and the population at large. Under these circumstances, we do not consider that use of mechanical restraints such as leg manacles or waist chains, in addition to handcuffs, is excessive or unreasonable.").

The Court finds that Defendants have produced competent evidence showing a legitimate penological justification for the policy of leaving waist chains on prisoners in the courthouse holding facilities. Given

---

**9.** Plaintiff apparently agrees with Defendants' assertion that he is given a mattress when he has to sleep on the floor. (Pl.'s Objecs. and Resps. to Def.'s Stmnt. of Mat. Facts ¶ 21).

**10.** Plaintiff does not assert that the use of waist chains while transporting prisoners is unconstitutional, only the use of chains in the holding cell. (Pl.'s Objecs. and Resps. to Def.'s Stmnt. of Mat. Facts ¶ 17).

the limited number of personnel available to supervise potentially dangerous prisoners in several different locations within the courthouse and the fact that the prisoners are outside of the confines of the detention center in which they are normally housed, the Court concludes that the policy is not unreasonable and does not violate the Eighth Amendment.

c. denial of medical assistance

In order to state a valid § 1983 claim for inadequate medical treatment while in prison, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Only treatment that falls below this standard constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. *Id.* at 104, 97 S.Ct. at 291. In explaining the deliberate indifference standard, the Eleventh Circuit Court of Appeals has observed that the refusal to treat must be a "gross violation of accepted practice." *Howell v. Evans*, 922 F.2d 712, 721 n. 9, *vacated*, 931 F.2d 711 (11th Cir.1991).[11]

In *Howell*, the widow of a prison inmate who had died during a severe asthma attack brought a § 1983 action against her decedent husband's attending physician. The plaintiff alleged that the doctor had left the hospital when her husband was receiving treatment for a serious illness, was unavailable during the day when needed, did not diligently pursue alternate treatment at another hospital, and did not prescribe further treatment soon enough. The Eleventh Circuit held that none of these allegations rose to the level of deliberate indifference. The court observed when the Supreme Court established the standard in *Estelle* it referred to two cases as examples of deliberate indifference, one in which a doctor injected penicillin into a patient he knew to be allergic and the other

in which a doctor threw away a salvageable ear and stitched the stump. *Id.* In holding that the doctor's actions in the instant case did not constitute deliberate indifference, the court noted that such actions did not compare with the shocking examples cited in *Estelle*. *Id.*

This circuit has also held that certain medical needs are not sufficiently serious that failure to provide medical care amounts to cruel or unusual punishment. In *Dickson v. Colman*, 569 F.2d 1310, 1311 (5th Cir.), *cert. denied*, 439 U.S. 897, 99 S.Ct. 259, 58 L.Ed.2d 244 (1978), the former Fifth Circuit held that no serious medical need was demonstrated where the plaintiff's high blood pressure presented "no true danger" or "serious threat" to his health, and where plaintiff had full range of motion in his shoulder, despite continuing pain from a five year old injury. *See also Shabazz v. Barnauskas*, 790 F.2d 1536, 1538 (11th Cir.), *cert. denied*, 479 U.S. 1011, 107 S.Ct. 655, 93 L.Ed.2d 709 (1986); *Brown v. Hughes*, 894 F.2d 1533, 1538 n. 4 (11th Cir.), *cert. denied*, 496 U.S. 928, 110 S.Ct. 2624, 110 L.Ed.2d 645 (1990).

In the present case, Plaintiff alleges that (1) he had to sleep on the floor in violation of his doctor's orders, and (2) he was not given medication that was prescribed by his doctor.[12] The Court concludes that neither of these allegations, even if true, rises to the level necessary to constitute the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104, 97 S.Ct. at 291. Plaintiff has not alleged "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106, 97 S.Ct. at 292. Thus, the Court finds that summary judgment is appropriate on this claim.

### CONCLUSION

For the foregoing reasons, the Court concludes that summary judgment is appropri-

---

11. The *Howell* opinion was vacated because the case had settled when appellees' motion to withdraw its petition for rehearing en banc was granted. 931 F.2d at 712. The Court cites the *Howell* opinion not as binding precedent but as indicative of this circuit's analysis of the deliber-

ate indifference standard, as the opinion contained an extensive discussion of that standard.

12. The Court can find no mention in the complaint or amended complaint of any specific prescribed medication that the Plaintiff was denied.

ate. Plaintiff has not shown that a genuine issue of material fact exists that Defendants deprived him of any federal constitutional or statutory right, as required to state a cause of action under § 1983. Moreover, even if Plaintiff has made such a showing, Defendants are still entitled to judgment as a matter of law because Plaintiff has not shown that any violations by the municipal defendants amounted to a policy or custom or that any violations by the individual defendants infringed on clearly established statutory or constitutional rights of which a reasonable person would have known.

Accordingly, Defendants' Motion for Summary Judgment [32–2] is GRANTED. Plaintiff's Motion for a Court Order [22–1], Defendants' Motion for a Protective Order [23–1], Plaintiff's Motion for a Free Transcript [24–1], Plaintiff's Motion for a Court Order [26–1], Plaintiff's Motion for Partial Summary Judgment [29–1], Defendants' Motion to Dismiss [32–1], Defendants' Motion for a Protective Order [33–1], and Plaintiff's Motion for Additional Discovery [42–1] are all DENIED AS MOOT.

SO ORDERED.