**Stewart M. MANN, Plaintiff-Appellant,**

v.

**Dallas SMITH, et al.,
Defendants-Appellees.**

No. 84–1985.

United States Court of Appeals,
Fifth Circuit.

Aug. 4, 1986.

---

Stewart M. Mann pro se.

Patrick C. Appel, Baker & Botts, William J. Dyer, Houston, Tex., (Court Appointed—Not under Act), for plaintiff-appellant.

Mark H. Dettman, Midland, Tex., for defendants-appellees.

Before GEE and HIGGINBOTHAM, Circuit Judges, and HARVEY *, Senior District Judge.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

A pretrial detainee at a county jail was subjected to a general rule under which inmates were forbidden to receive newspapers and magazines. The proffered justification for this rule was a desire to reduce the threat of fires and clogged toilets. In view of the jail's policy of allowing inmates to possess other material that was flammable and capable of being used to interfere with the plumbing, we hold that the rule is too underinclusive to be upheld under the applicable first amendment test.

The plaintiff also claims that he was denied his constitutional right of access to the courts because jail officials refused to let him visit a law library while he was preparing this case. We conclude that the plaintiff in fact had meaningful access to the courts even though he was denied the use of a law library.

## I

Stewart Mann was held on criminal charges in the Midland County (Texas) Jail for 98 days as a pretrial detainee. After pleading guilty to the charges, he was held an additional 13 days before being transferred to the Texas Department of Corrections. During this time, he chose to live in a small private cell because prisoners in larger, general-population cells sometimes had to sleep on mattresses on the floor. Mann complains that he was subjected to the following conditions by the defendants:[1]

(1) Pursuant to a general policy at the jail, he was denied access to newspapers and magazines.

(2) Although he was permitted to request that specific law books be brought to him at the jail, he was denied the opportunity to visit a law library and was not provided by the jail with personal assistance from persons trained in the law.

(3) He was seldom or never permitted to go outside his cell for physical exercise.

(4) Because of plumbing problems at the jail, he was deprived of access to hot water for some period of time.

(5) On one occasion, an unarmed guard expressed a desire to take Mann outside and murder him.

(6) In his complaint in this lawsuit, Mann alleged that a crime information computer in the jail building was being misused by other inmates. After being transferred to the state prison, the Midland County Sheriff's Department asked the warden of that institution to question Mann about his knowledge of the problem. The warden did so.

(7) Some inmates who worked as file clerks at the jail had access to files on other inmates.

Mann also complains (8) that the defendants' answers to his amended complaints in this lawsuit were identical to their answer to his original complaint; and (9) that the guilty plea he entered while he was living in the jail was coerced.

While at the county jail, Mann filed a *pro se* § 1983 complaint against the Midland County Sheriff and a Deputy Sheriff, in

---

* District Judge of the Eastern District of Michigan, sitting by designation.

1. Some of Mann's factual allegations were disputed at trial. He also pressed a number of other claims in the district court, but these have not been pursued on appeal.

which he asked for declaratory and injunctive relief. After being transferred to the state prison, he amended his complaint to ask for damages. Following discovery and other procedural preliminaries, the district court held a bench trial, concluded that Mann had not been deprived of any federally protected right, and entered a take-nothing judgment in favor of the defendants. Mann appealed, and this court ordered that an attorney be appointed to represent him.

## II

■ Mann's single meritorious argument is that the district court erred in concluding that the jail's policy of banning newspapers and magazines left his constitutional rights untouched. It is undisputed that the Midland County Jail had a policy that forbade inmates to receive or possess newspapers and magazines. The asserted justifications for this policy were that newspapers and magazines are fire hazards, and that they can be used to clog up the plumbing. It is also undisputed, however, that smoking by prisoners was banned; that the inmates were permitted to have softcover books; that writing paper and toilet paper were freely available; and that the inmates had sheets, blankets, pillows, and clothing that could be used to interfere with the plumbing.

■ Mann contends that the jail's policy on newspapers and magazines violated his rights under the first and fourteenth amendments. Because it is unconstitutional to inflict deliberate punishment on pretrial detainees, it is necessary to distinguish such punishment from justifiable "regulatory restraints." *Bell v. Wolfish,* 441 U.S. 520, 535–37, 99 S.Ct. 1861, 1871–73, 60 L.Ed.2d 447 (1979). Absent an expressed punitive purpose, an intention to punish may nonetheless be imputed to jail officials if a disability imposed on an inmate is not "reasonably related to a legitimate governmental objective" or an "incident of a legitimate nonpunitive govern-

mental objective." *Id.* at 538–39 & n. 20, 99 S.Ct. at 1874 & n. 20.

The defendants, who have not expressed an intention to punish Mann, assert that the purpose of the ban on newspapers and magazines is to prevent fires and clogged toilets. Because the jail has a no smoking rule for inmates and because the jailers permit the inmates to have other forms of paper and similar materials, the official rationale seems tenuous at best. Nevertheless, it is hard to deny that the rule might slightly reduce the possibility of fire and that it might remove some opportunities and temptations for the inmates to do mischief to the plumbing; furthermore, the jail's rule would rather obviously serve the convenience of the jailers by helping to keep trash from piling up in the inmates' living areas. Under the general test articulated in *Bell v. Wolfish,* which is designed to root out intentional punishment rather than self-serving inconsiderateness, we doubt that the jail's rule constitutes unconstitutional punishment.

We need not decide this question, however, because the ban on newspapers and magazines must be struck down under the first amendment[2] if it represents an "exaggerated response" by jail officials to the legitimate need to "preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. at 547–48, 99 S.Ct. at 1878–79. The patently underinclusive nature of the regulation strongly suggests that it is indeed an exaggerated response; certainly it contrasts with the carefully tailored restriction on hardbound books that was upheld in *Bell v. Wolfish* itself. Perhaps the jail officials who established this policy had some very important and legitimate purpose that could not be accomplished without denying the inmates access to newspapers and magazines. If so, the defendants' lawyers have not brought it to our attention, and we have not been able to imagine what it could have been.

2. The free speech clause of the first amendment operates against the states through the Supreme Court's construction of the fourteenth amendment's due process clause. *See Gitlow v. New York,* 268 U.S. 652, 666, 45 S.Ct. 625, 629, 69 L.Ed. 1138 (1925).

The defendants seek to defend the regulation by noting that the jail provides the inmates in general-population cells (where Mann could have lived had he so chosen) with access to television, which the defendants contend is an adequate substitute for newspapers and magazines. They accordingly argue that the ban on certain printed materials is a legitimate "time, place, and manner" restriction. *See, e.g., Grayned v. City of Rockford,* 408 U.S. 104, 115, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972). Whatever the intrinsic merits of television in comparison with newspapers and magazines, the contents of television are different from what one finds in the printed media. It is not up to the Midland County Sheriff or this court to decide that television can adequately serve the first amendment right to receive protected materials.[3] Rather, we must apply the principle that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). Although jail officials may find it inconvenient to give inmates access to newspapers and magazines, the defendants have not suggested how such access is inconsistent with any legitimate jail function. Because it is undisputed that Mann sought to obtain newspapers and magazines while he was being held at the jail, we must conclude that Mann's constitutional rights were infringed by the jail's policy and reverse the judgment of the court below.[4]

### III

■ Mann also makes a colorable argument that his right of access to the courts was violated because the jail's "checkout" system for law books did not conform with the minimum standards prescribed by *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct.

1491, 52 L.Ed.2d 72 (1977), and *Morrow v. Harwell,* 768 F.2d 619 (5th Cir.1985). Under *Bounds,* the government is obliged to provide prisoners wishing to make a constitutional claim in a civil rights complaint or habeas corpus petition "with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828, 97 S.Ct. at 1498. In *Morrow,* we concluded that pretrial detainees, some of whom had been held for about the same length of time that Mann was held, had a right to more legal assistance than Mann was provided with. This strongly suggests that the Midland County Jail's policy on legal assistance for inmates was not what it should have been.

■ *Morrow,* however, was a class action in which declaratory and injunctive relief was sought, while this is an individual suit brought by a person who is no longer being held at the Midland County Jail. Although *Bounds* held that prison authorities are required to provide inmates with certain assistance, it did not say that there is a constitutional right to such assistance. Rather, the Court spoke of a "constitutional right of access to the courts" and emphasized that "our main concern here is 'protecting the *ability* of an inmate to prepare a petition or complaint.' " 430 U.S. at 828 & n. 17, 97 S.Ct. at 1498 n. 17 (citation omitted) (emphasis added). The defendants point out that during the time Mann was in the county jail, he had access to an attorney, who had been appointed to represent him in connection with the criminal charges on which he was being held. The defendants argue that because Mann was represented by an attorney at the time in question, we should presume that he had available to him the minimal level of legal assistance required by *Bounds.* We agree that an inmate who has a lawyer and who wants to file a civil rights complaint has the burden of requesting assistance from that lawyer. This is not to say that the

---

3. On the first amendment right to receive information and ideas, *see Kleindienst v. Mandel,* 408 U.S. 753, 762–63, 92 S.Ct. 2576, 2581–82, 33 L.Ed.2d 683 (1972) (collecting cases).

4. In *Kincaid v. Rusk,* 670 F.2d 737 (7th Cir. 1982), the court found a violation of the first amendment on facts that were similar to those in the present case.

lawyer is compelled to represent the inmate in the proposed civil rights action. It is only to acknowledge that attorneys can often rather easily give inmates the information that they need to proceed *pro se*, and that if they do so, unnecessary *Bounds* problems may be avoided. This reasoning, however, does not help the defendants in this case. Mann testified, without rebuttal, that he requested assistance from his court-appointed attorney, and that this request was refused: "[H]e told me himself he was restricted to those criminal charges, and he could not help me file lawsuits. And it was just as simple as that." We therefore cannot conclude that Mann's access to his court-appointed attorney was insufficient to satisfy the requirements of *Bounds*.

■ There are other grounds, however, on which Mann's right-of-access argument must be rejected. *Morrow* concluded that the *Bounds*-created "right of access includes the ability to file a legally sufficient claim." 768 F.2d at 623 (citation omitted). As the court below pointed out to Mann:

> You were denied access to the law library. You were not denied access to the Courts, because obviously you are here. You have filed a lawsuit, you have had a trial.

It is true, of course, that the filing of a paper "that, without determinatin of whether it states a claim legally sufficient and within the court's jurisdiction, is subject to dismissal on grounds of convenience to court and litigants," would not by itself constitute meaningful access to the courts under *Bounds*. *Bonner v. City of Prichard*, 661 F.2d 1206, 1212 (11th Cir.1981) (en banc). But as the trial judge knew very well, and as we have confirmed by examining the record, Mann in fact filed a detailed civil complaint along with an affidavit in support of a request to proceed *in forma pauperis*. The IFP request was granted, and the court ordered that a copy of the complaint be served on each of the defendants. While Mann was still at the county jail, the defendants answered, the court ordered that discovery proceed, and Mann amended his complaint to state additional claims and to ask for additional relief. Mann himself proved in an irrefutable manner that he was able to file a legally sufficient complaint: by doing so.[5]

■ Mann, however, contends that if the county jail had provided him with adequate legal assistance, he might also have been able to obtain a temporary restraining order against the unconstitutional condition to which he was being subjected. As we pointed out in *Morrow*, the principles stated in *Bounds* "suffer for lack of internal definition and prove far easier to state than to apply," perhaps because they have no clear textual footing in the Constitution. 768 F.2d at 623. *Bounds* is vague about exactly what kinds of claims by inmates trigger the "right of access" to the courts, how long a person must be detained before the right is triggered, and what level of legal assistance is required to protect the right. *See Morrow*, 768 F.2d at 622–23. This much, however, is clear: the Constitution does not require the government to provide inmates with attorneys to represent them in their civil actions, and *Bounds* cannot have meant to require legal assistance equivalent to the provision of a lawyer. *Morrow* held that the right of access under *Bounds* "includes the ability to file a legally sufficient claim." 768 F.2d at 623 (citation omitted). Extending the right this far is manageable in a case like the one before us because a court can examine the record and determine, as a threshold question, whether a legally sufficient claim was filed. To determine whether an individual's right of access to the courts was violated by a failure to provide him with the means of pursuing a temporary restraining order, or other emergency relief in equity, is a much more uncertain and problematic venture.

Perhaps the most obvious way to proceed would be to put ourselves in the shoes of a hypothetical trial judge faced with a hypo-

---

**5.** *Accord Hudson v. Robinson*, 678 F.2d 462, 466 & n. 5 (3d Cir.1982) (holding that actual injury must be shown in order to make out a *Bounds* claim).

thetical motion for emergency relief and then try to guess how this hypothetical judge would have exercised his wide discretion in ruling on the hypothetical motion. We think that such an exercise would serve little purpose other than to dress up a judgment call by us in the formal clothes of legal reasoning. Better, we think, simply to examine the record and decide whether Stewart Mann had "meaningful access" to the U.S. District Court. We conclude that he did. Mann's IFP request, which was accompanied by a civil complaint that was technically more sophisticated than many complaints drawn up by licensed attorneys, was granted within nine days after it was filed. Mann's single meritorious claim was the first one listed on his complaint, and the defendants soon responded with an answer in which they admitted the facts that formed the basis for that claim. Thus, the exact nature of Mann's one valid claim, as well as his *pro se* status, was before the district judge in a clear form from the very beginning, and the judge handled the case in an appropriately expeditious manner.[6] We have no reason to assume that the district judge would have handled this case differently had he been given a paper that was styled as a motion for a temporary restraining order. Accordingly, we conclude that Mann had meaningful access to the courts, and we affirm the rejection of his *Bounds* claim.

### IV

■ The remainder of Mann's claims are meritless and easily disposed of. First, Mann complains that his cell, unlike the larger general-population cells, was too small to allow him to get adequate physical exercise. Mann himself, however, chose to stay in a small private cell because he did not want to sleep on a mattress on the floor. He contends that this does not affect his physical-exercise claim because "[r]equiring pretrial detaine[e]s to sleep on mattresses placed on the floor is unconstitutional," and he could not legitimately be forced to choose between two unconstitutional conditions. Mann has cited no case holding that the Constitution requires elevated beds for prisoners, and we know of no source for such a right. The district court correctly rejected Mann's physical-exercise claim.

■ Mann contends that he was deprived of hot water for some period of time, but he neither alleged nor proved that any such deprivation was intentional or the result of knowing neglect by jail officials. At trial, in fact, he specifically denied that he was making any such allegation. The district court correctly assumed that there is no constitutional right to hot water and correctly held that punitive intent could not be inferred from the record.

■ Mann asserts that his constitutional rights were violated when a guard expressed a desire to murder him. The record, although skimpy on this issue, suggests that an unarmed guard told Mann that he *wished* he could take him outside the jail and shoot him, but that the guard made no actual threat to do so. Whatever the law might say about an actual threat of murder, this guard's intemperate remark falls under the maxim *de minimis non curat lex.*

■ The district court found that the warden of the state prison questioned Mann about his lawsuit at the request of the Midland County Sheriff's Department; that the inquiry was minimal and non-threatening; and that Mann was not subjected to any kind of punishment or restriction at the prison as a result of the request by the Sheriff's Department. The record suggests that the Midland County request was triggered by Mann's own allegation that crime information computers in the Midland County jail building were being illegally used by other inmates. The fact that Mann put this allegation into a civil complaint could not insulate him from be-

---

6. Only eight days after the defendants' answer was filed, Mann was transferred out of the jail to the state prison, and it seems quite unlikely that a hearing would have been scheduled before Mann's departure.

ing asked about it, and the district court correctly concluded that Mann suffered no injury as a result of the defendant's request to the state prison warden.

■ Mann also complains that inmates working at clerical tasks had access to the files on other inmates. Whether or not this occurred, the district court found that Mann had failed to show at trial that any inmate ever examined his file or used any information in it against him; the court held that Mann's rights could not have been violated by inmates looking at the files of other inmates. The district judge's finding is supported by the record, and his legal conclusion was correct.

■ Finally, Mann raises two issues that were not properly pursued below. First, he complains that the defendants filed answers to his amended complaints that were identical to the answer they filed to his original complaint. The defendants' answers admitted certain of Mann's allegations and generally denied the others. Fed. R.Civ.P. 8(b) permits this practice, and Mann did not ask the trial judge to impose sanctions under Fed.R.Civ.P. 11. In any case, there is no cause of action for failure to comply with Rule 11, and there is certainly no need for defendants to think up new ways of stating a general denial in response to each amended complaint. Second, Mann now alleges for the first time that he was somehow pressured by the defendants to plead guilty to the criminal charges on which he was being held at the jail. This appears to be an attack on the validity of his criminal conviction, and we decline to address it. *See Williams v. Dallas County Commissioners,* 689 F.2d 1212 (5th Cir.1982).

### V

The judgment of the district court is affirmed in all respects except as to the first amendment claim. On remand, the court will declare unconstitutional the rule forbidding inmates to receive or possess newspapers and magazines. The district court will also make findings as to damages, giving due consideration to the rule that nominal damages should be awarded if actual damages are not established. *See, e.g., Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Memphis Community School Dist. v. Stachura,* —— U.S. ——, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986); *Familias Unidas v. Briscoe,* 619 F.2d 391, 402 (5th Cir.1980). Injunctive relief, however, should not be given. *See Morrow v. Harwell,* 768 F.2d 619, 627–28 (5th Cir.1985).

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.