**Phillip C. MATTHEWS, Plaintiff,**

v.

**Howard PETERS, III, et al., Defendants.**

**No. 91 C 8205.**

United States District Court,
N.D. Illinois, E.D.

April 6, 1993.

---

20. CONRAIL Motion for Partial Summary Judgement ¶ 5.

Stuart W. Opdycke, Chicago, IL, for plaintiff.

Gregory Abbott, Asst. Atty. Gen., Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Phillip Matthews ("Matthews") originally filed a self-prepared Complaint against five employees of the Illinois Department of Corrections under 42 U.S.C. § 1983 ("Section 1983"). Matthews there charged that defendants violated his constitutional rights by depriving him of hot water in his cell at Stateville Correctional Center ("Stateville") for a period of some seven months, throughout his entire time in I House (Stateville's segregation unit) from May 1991 until the time that Matthews filed his Complaint in December of that year. In accordance with its almost invariable practice when a pro se complaint meets the test of legal non-"frivolousness" defined in *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) and further refined in *Denton v. Hernandez,* —— U.S. ——, ——–——, 112 S.Ct. 1728, 1733–34, 118 L.Ed.2d 340 (1992), this Court then appointed counsel to represent Matthews on a pro bono publico basis.[1]

All defendants have now filed a motion under Fed.R.Civ.P. ("Rule") 12(c) for judgment on the pleadings. One aspect of their arguments is groundless, and the other—though it presents a closer question—fails to carry the day. Accordingly defendants' motion is denied for the reasons stated in this memorandum opinion and order.

■ Defendants get off on the wrong foot by quarreling with the inclusion, in the responsive memorandum filed by Matthews' appointed counsel, of any references to Matthews' deposition testimony. But that objection really misses the important distinction between a Rule 12(b)(6) motion to dismiss (which attacks only the sufficiency of an existing complaint and therefore allows the opportunity to cure any problem with that pleading) and a Rule 12(c) motion for judgment on the pleadings (which asserts that the complaint is flawed in such a way that it cannot be cured by repleading, so that defendants are entitled to a final judgment of dismissal of the action itself).

It is in that latter context that a court confronted with a Rule 12(c) motion must apply the well-established concept summarized in 5A Charles Wright & Arthur Miller, *Federal Practice and Procedure: Civil* 2d

---

1. Although Matthews' Complaint also asserted alleged due process violations in connection with some disciplinary proceedings at Stateville, the appointed counsel's memorandum on the current motion reflects that those claims have been voluntarily withdrawn by· Matthews (Matthews Mem. 1 n. 1).

§ 1368, at 517–19 (2d ed. 1990) (footnotes and numerous citations again omitted):

> The federal courts have followed a fairly restrictive standard in ruling on motions for judgment on the pleadings. Although the motion may be helpful in disposing of cases in which there is no substantive dispute that warrants proceeding further, thereby easing crowded trial dockets, hasty or imprudent use of this summary procedure by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his claim or defense. The importance of this policy has made federal judges unwilling to grant a motion under Rule 12(c) unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law. In considering a motion for judgment on the pleadings, the trial court is required to view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. In this fashion the courts hope to insure that the rights of the nonmoving party are decided as fully and fairly on a Rule 12(c) motion, as if there had been a trial.

Elaborating on that concept, Wright & Miller, *id.* at 524 (footnote and numerous citations omitted) goes on to say:

> In addition to assuming the truthfulness of the factual allegations for purposes of the motion, all reasonable inferences and intendments from these facts are drawn in favor of the nonmoving party.

In this instance Matthews' complaint about his conditions in segregation says (1) that the absence of hot water in his cell continued for many months[2] and (2) that defendants refused to correct the situation despite numerous letters and oral and written requests by Matthews. As a result, Matthews says, he "cannot take a bath or do anything that he needs hot water for." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229,

2232, 81 L.Ed.2d 59 (1984) teaches that under Rule 12(b)(6) (and the same principle applies with equal force for Rule 12(c) purposes):

> A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.

Thus the complained-of deposition references in Matthews' memorandum do little more than to buttress the perfectly proper notice pleading in Matthews' Complaint with a more particularized factual presentation (something that is really not required in pleading terms, *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit,* —— U.S. ——, —— - ——, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993)).[3]

But defendants' current motion is not limited to the baseless procedural point that has just been rejected. In substantive terms defendants urge that judgment on the pleadings is in order because they should be relieved from having to defend this lawsuit on qualified immunity grounds. In that respect they advance a twofold argument: that prisoners do not have a constitutional right to hot water in their cells, and that even if such a constitutional right exists it is not as "clearly established" as the qualified immunity doctrine requires.

For the former proposition defendants lean entirely on an extraordinarily weak reed, a brief statement in *Mann v. Smith,* 796 F.2d 79 (5th Cir.1986). *Mann* was a lawsuit brought by a pretrial detainee at a county jail who complained of a host of conditions of his confinement. It requires only a quotation of everything that the Court of Appeals said about one of those claims— asserted the absence of hot water—to demonstrate how patently inapplicable it is to Matthews' case (*id.* at 85):

> Mann contends that he was deprived of hot water for some period of time, but he neither alleged nor proved that any such deprivation was intentional or the result of

---

2. As indicated later in this opinion, the condition persisted for even longer than that.

3. In one respect the depositions do go beyond the Complaint by revealing that the deprivation

of any access to hot water continued until Matthews was finally released from the segregation unit in April 1992—a total span of 11 months.

knowing neglect by jail officials. At trial, in fact, he specifically denied that he was making any such allegation. The district court correctly assumed that there is no constitutional right to hot water and correctly held that punitive intent could not be inferred from the record.

■ It is of course true that the standard for qualified immunity turns on whether the legal rules that the official is alleged to have violated were "clearly established" when the official acted (*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). But the statement of that proposition marks the beginning rather than the end of the analysis, for as *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) has elaborated on that proposition:

> The operation of this standard, however, depends substantially upon the level of generality at which the relevant "legal rule" is to be identified.

And that in turn calls for something in between (at one extreme) a plaintiff's reliance on the general proposition that "the right to due process of law is quite clearly established by the Due Process Clause," so that any due process violation is rendered actionable (*id.*), and (at the other extreme) a plaintiff's need to identify a "white horse" case that is on all fours with the current one in factual terms. As *Anderson, id.* at 640, 107 S.Ct. at 3039 (citations omitted) went on to say:

> It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see

*Mitchell [v. Forsyth], supra*, [472 U.S. 511] at 535, n. 12 [105 S.Ct. 2806, at 2820, n. 12, 86 L.Ed.2d 411 (1985)]; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

On that score the definitive teaching in *Wilson v. Seiter*, ― U.S. ―, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)—decided in the earliest days of Matthews' time in segregation, fully six months before he was compelled to bring this suit—blocks defendants' entitlement to a qualified immunity dismissal. *Wilson* announced a restrictive reading of all Eighth Amendment[4] challenges to prisoners' conditions of confinement, requiring a showing of "deliberate indifference" by the responsible officials. But that "deliberate indifference" test is clearly met by Matthews' allegations of defendants' refusal to cure a readily remediable condition despite his numerous importunings to correct the problem—and what is perhaps more important is that *Wilson* announced (1) that *any* deprivation (including a single condition of confinement) meets that test if it denies "the minimal civilized measure of life's necessities" (*id.* ― U.S. at ―, 111 S.Ct. at 2324), (2) that whether the conduct "can be characterized as 'wanton' depends upon the constraints facing the *official*" (*id.* ― U.S. at ―, 111 S.Ct. at 2326)[5] and (3) that "the deprivation of a single, identifiable human needs such as food, warmth or exercise" (*id.* ― U.S. at ―, 111 S.Ct. at 2327) satisfies the already-quoted standard. And it is certainly a fair reading of Matthews' complaint that defendants' 11–month refusal to fix the often-complained-of condition was punitive in nature (remember that Matthews was confined in segregation throughout that period).

### Conclusion

What Matthews presents here is not a case of the limited and short-term absence of some amenity (the type of thing that was dispatched summarily in *Mann*). Instead,

---

4. As always, this opinion adheres to the conventional and convenient (though technically imprecise) practice of referring to the Eighth Amendment's underlying Bill of Rights provision (which of course imposes limitations only on the federal government) rather than to the Fourteenth Amendment (which applies to state actors and has been construed to embody such Bill of Rights guaranties).

5. In this instance, of course, there is no constraint at all that prevents prison authorities from fixing a hot water faucet in a cell.

when Matthews' allegations are taken at face value with reasonably favorable inferences (as they must be), what the case involves is a long-protracted deprivation that was deliberately imposed on someone confined in segregation and that made it impossible for him to bathe during extended periods of time.[6] Defendants' motion is denied. This case must be resolved by a factfinder at trial.

---

**6.** One respect in which Matthews amplified on that grievance during his deposition is that shower privileges were often suspended during lockdowns or for other reasons, and that the showers themselves were cold most of the time. Under those circumstances it would appear that the lack of hot water in Matthews' cell was doubly punitive.