# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 24, 2014

No. 12-20195

Lyle W. Cayce
Clerk

SHAWN JOSEPH STAUFFER

Plaintiff-Appellant,

v.

MARNA E. GEARHART; TAMMY A. BROADWAY; LAPORSHA C. JENKINS; JENNIFER SMITH; ENOGONG J. INYANG; GERALYN ENGMAN; MADALINE ORTIZ; DAVID L.  BONE; CHARLES A. WILLIAMSON; BRIAN A. KASPAR; ROBERT D. LIONS, III; RALPH A. PHILLIPS; ROBERT L. VANBURKLEO; GAIL THOMPSON; BRAD LIVINGSTON; JOHN/JANE DOE

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:

Prison mailroom employees confiscated copies of several automotive magazines that inmate Shawn Stauffer ("Stauffer") ordered while he was participating in the Texas Department of Criminal Justice's ("TDCJ") Sex Offender Treatment Program ("SOTP" or "Program").  Stauffer filed a § 1983 action alleging that these confiscations violated his First and Fourteenth Amendment rights.  The district court dismissed his claims on summary judgment and Stauffer appealed.  He seeks both monetary and injunctive relief

No. 12-20195

for these alleged violations.  Because Stauffer is not entitled to either form of relief, we AFFIRM the district court's dismissal of Stauffer's case.

I.

Stauffer was convicted of the attempted aggravated sexual assault of a child.  In 2008, TDCJ assigned Stauffer to the Goree Unit so he could attend TDCJ's SOTP.  The Program's goals are (1) to help participants understand and control the sexual urges that caused them to commit sexual crimes, and (2) to provide training and skills to allow sex-offenders to act in a manner that promotes the safety of the communities to which they may return.  Participants are enrolled in the Program for the last eighteen months of their incarceration and spend those months in intensive treatment in a group therapeutic environment.

TDCJ limits the outside activities and reading material available to participants during their time in the Program.  According to TDCJ, this policy is meant to maximize SOTP's effectiveness by allowing participants to focus all of their energy on fulfilling the Program's requirements.  According to affidavits submitted by Defendants, SOTP participants spend "24 hours a day, seven days of week" engaged in the Program, "leaving essentially no time for any other activities."   At the time that Stauffer was enrolled in SOTP, Program participants could not engage in vocational activities or other programs during their time in SOTP, except for certain GED programs.  In addition, participants were subject to SOTP 02.06, which provided, in relevant part:

> II. In order to facilitate treatment, additional standards for offender correspondence have been imposed. They are as follows:
>
> A. No publications other than newspapers and religious material shall be accepted.
>
> B. Correspondence containing content approving or promoting alcohol/drug use shall be rejected for offender receipt.

No. 12-20195

C. Correspondence that is sexually suggestive, explicit, and/or provocative in nature shall be rejected for offender receipt. Sexually explicit and/or provocative correspondence includes, but is not limited to, nudity or partial nudity that is stimulating/exciting or sexually suggestive in nature.

D. Offenders may not appeal denials to the Director's Review Committee based on these additional restrictions.

From February through May 2008, the Goree Unit Mailroom confiscated Stauffer's copies of "CarCraft," "HotRod," "Performance Products," and "Jeg's Performance Parts" magazines while he was enrolled in SOTP. According to Stauffer, he wanted the magazines because they "provide[d] information related to his trade in automotive repair and performance." TDCJ prevented Stauffer from receiving "publications such as 'Car-Craft,' 'Hot-Rod,' and 'Low Rider' magazines" because (1) "all vocational programs must be completed prior to entering the SOTP"; (2) "such publications often contain sexually explicitly material which strongly undermines the goals of the program"; and (3) "18 months is far too brief a period in which to cover all of the material of the program . . . . [and i]t is of the highest priority that participants enrolled in the [SOTP] use those 18 months to their utmost and not be allowed to engage in unnecessary distractions."[1] At least one of the confiscated magazines "displays women in sexually provocative positions."

Stauffer appealed the restrictions on these reading materials through the TDCJ grievance process. In response to his Step 2 Grievance, TDCJ explained that the mailroom staff properly confiscated the magazines in accordance with SOTP 02.06. On May 20, 2008, Stauffer filed this § 1983 suit against fifteen

---

[1] Stauffer contested Defendants' claims about the all-consuming nature of SOTP. He asserts that SOTP modules and therapy occurred from 7:00 a.m. and 4:00 p.m. and that, outside of treatment hours, SOTP inmates were allowed to attend outside recreation and religious services, read newspapers and religious materials, and to check materials out of the prison library. According to Stauffer, a number of magazines, as well as at least one of the publications denied to Stauffer, were available in the prison library.

3

No. 12-20195

TDCJ employees in their individual and official capacities ("Defendants") claiming that they: (1) violated his First Amendment rights by confiscating the magazines under SOTP 02.06; (2) violated his Due Process rights under the Fourteenth Amendment by failing to provide any meaningful review of the mailroom employee's decisions; and (3) violated his Equal Protection rights under the Fourteenth Amendment by applying the policy solely to inmates participating in SOTP. He seeks one million dollars in nominal, punitive, and compensatory damages against each Defendant, as well as a declaratory judgment that SOTP 02.06 violated his First and Fourteenth Amendment rights. In their answer, Defendants asserted a number of defenses, including qualified immunity under the Eleventh Amendment.

On September 28, 2009, Defendants filed a motion for summary judgment. The district court granted the motion in part, ruling that Defendants were entitled to immunity from Stauffer's claims for monetary compensation against them in their official capacity, and that Stauffer's claim for monetary compensation for the loss of the magazines was not a viable § 1983 claim.[2] The district court thus dismissed Stauffer's Due Process claim. The district court then ordered Defendants to file an amended motion for summary judgment addressing only Stauffer's First Amendment and Equal Protection claims. Defendants did so. Stauffer then filed a response to the amended motion for summary judgment. In this response, Stauffer claimed for the first time that Defendants were retaliating against him for bringing the lawsuit and asserting his First Amendment rights. He asserted that the retaliation included denying

---

[2] In separate orders, the district court also denied Stauffer's motions to appoint counsel, and to preliminarily enjoin prison officials from confiscating his magazines. The district court also denied Stauffer's motions for discovery because he failed to set forth any grounds or arguments showing good cause. The district court noted, however, that the ruling was "subject to plaintiff timely resubmitting his discovery motions with a showing of good cause for each particular discovery request." Stauffer did not file any further discovery requests.

him parole, a false civil commitment action, and a false report to the INS claiming he was an illegal alien.

The district court granted Defendants' amended motion, concluding that Stauffer failed to show that TDCJ's additional restrictions on his access to magazines while in SOTP violated his First Amendment or Equal Protection rights. The district court also rejected Stauffer's retaliation claim because the "assertion of retaliation was not raised in the complaint, is not before the Court, and must be pursued by plaintiff through a separate lawsuit." Stauffer appealed.[3]

At oral argument, counsel for Stauffer represented that Stauffer is no longer enrolled in SOTP. In February 2013, TDCJ published a revised version of SOTP 02.06 ("Revised 02.06"). Revised 02.06 provides:

> A. If any part of a publication, other printed material, or correspondence is determined to be detrimental to rehabilitation, then the entire publication, other printed material, or correspondence shall be denied.
>
> B. Correspondence containing questionable content approving or promoting alcohol or drug abuse shall require further review by the Program Supervisor.
>
> C. Correspondence that is sexually suggestive, explicit, or provocative in nature shall be rejected for offender receipt or dispatch. Sexually explicit or provocative correspondence includes, but is not limited to: pictures, drawings, or language that is sexually stimulating or suggestive in nature.

Revised 02.06 also provides that "[a]ll procedures for offender correspondence shall be followed in accordance with the Texas Department of Criminal Justice Board Policy 03.91." A publication may be rejected under

---

[3] Stauffer argues that the district court also erred by denying him discovery, failing to review the confiscated magazines, denying Stauffer appointed counsel, applying an unfair pleading standard, and requiring Stauffer to file a separate lawsuit to address his retaliation claims. We need not determine whether the district court erred in reaching any of these conclusions because we hold that Stauffer was not entitled to injunctive relief or damages.

No. 12-20195

Policy 03.91 if "[a] specific determination has been made that the publication is detrimental to offenders' rehabilitation because it would encourage deviant criminal sexual behavior." Policy 03.91, IV(E)(1)(d). Policy 03.91 also requires a case-by-case review of materials containing sexually explicit images. *Id.* at IV(E)(1)(f).

## II.

We review the grant of summary judgment *de novo. Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009) (citation omitted). Summary judgment is appropriate if the record demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The proponent of the motion typically bears the burden of showing a lack of evidence to support his opponent's case.[4] *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008) (citation omitted). If a motion for summary judgment is properly supported, the opposing party may not rely merely on allegations or denials in its own pleadings, but must, in its response, set out specific facts showing a genuine factual dispute for trial. *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (noting that a nonmovant cannot satisfy his summary judgment burden "with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" (internal quotation marks and citations omitted)). Allegations in a verified complaint may serve as competent summary judgment evidence. *Hart v. Hairston*, 343 F.3d 762, 765

---

[4] Citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), Stauffer argues that "the usual requirement of presenting evidence borne by the party who will bear the burden of proof at trial does not apply to this case because discovery was disallowed." In *Celotex*, the Supreme Court interpreted Rule 56 to require "adequate time" for discovery; it said nothing about a situation, like the one here, where the district court has denied additional discovery because the party failed to show good cause. *See id.* As a result, Stauffer bears the burden of proof in this case.

No. 12-20195

(5th Cir. 2003). We draw inferences about disputed facts in Stauffer's favor, but must

> distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Bank*, 548 U.S. 521, 529–30 (2006). We may affirm the district court on any grounds supported by the record. *Mangaroo v. Nelson*, 864 F.2d 1202, 1204 n.2 (5th Cir. 1989).

## III.

Stauffer requests both injunctive and monetary relief for the alleged violations of his constitutional rights. We address each request in turn.

## A.

Stauffer's claims for injunctive relief are moot because TDCJ has replaced SOTP 02.06 with a new version of the rule that corrects the deficiencies that Stauffer complains of here. If the controversy between Stauffer and Defendants has been "resolved to the point that they no longer qualify as 'adverse parties with sufficient legal interests to maintain the litigation,' we are without power to entertain the case." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 324 (5th Cir. 2009), *aff'd sub nom., Sossamon v. Texas*, 131 S. Ct. 1651 (2011). Stauffer argues that nothing indicates that TDCJ's change in policy is permanent, and that his claims therefore qualify for an exception to the mootness doctrine. It is true that "defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Id.* at 325 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000)). In an ordinary case, "subsequent events" would have to make it "absolutely clear that the allegedly wrongful

7

behavior could not reasonably be expected to recur." *Id.* Stauffer's argument, however, ignores the "lighter burden" that government entities bear in proving that the challenged conduct will not recur once the suit is dismissed as moot. *Id.*

"[G]overnment actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties. Without evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing." *Id.* Here, TDCJ has published a new official version of SOTP 02.06, and Stauffer has not presented any evidence to suggest that the TDCJ is not following its own policy as written. As a result, the claim that Stauffer or any other participant[5] may again be subjected to the version of SOTP 02.06 in effect at the time that he was in the Program is "too speculative to avoid mooting the case." *Id.*

Stauffer does not argue that Revised 02.06 would violate his—or anyone else's—rights. Stauffer sought to enjoin the previous version of SOTP 02.06 because it did not require Defendants to review a publication's

> content, show specific article(s) or material(s) considered
> questionable to deny publications, allow the appeal to denial

---

[5] At oral argument Stauffer's counsel reported that Stauffer has completed SOTP, and is therefore not currently subject to any form of SOTP 02.06. Counsel for Defendants reported that Stauffer is still serving his sentence, and the parties were in disagreement as to whether it is possible that Stauffer could once again enroll in SOTP and thus be subject to any regulations applicable to participants. Assuming *arguendo* that he could never again be a SOTP participant, Stauffer argues that his case is still not moot because we have recognized exceptions to the "same parties" requirement in the "capable of repetition yet evading review" exception to mootness in certain circumstances. *See Moore v. Hosemann*, 591 F.3d 741, 744–45 (5th Cir. 2009); *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 662 (5th Cir. 2006). Stauffer has not pointed to any cases where we have held that this exception is also applicable when a plaintiff is challenging an on-going government policy in the prison context. *Cf. United States v. Howard*, 480 F.3d 1005, 1009–10 (9th Cir. 2007). We need not reach that issue today because there is no indication here that *anyone* will again be subject to the version of SOTP 02.06 at issue in this case. Likewise, we need not determine whether the fact that Stauffer has left the Program impacts his standing to request injunctive relief because we dismiss these claims as moot.

decisions, and additionally the specific acceptance of publications and subscription magazines as well as catalogs that relate to my trade allowed to be received by all other offenders and puzzle books to further stimulate the mind.

By contrast, Revised 02.06 requires an individualized review of publications before they are confiscated, and places far fewer limits on what publications an SOTP participant may receive. For example, while the old version of SOTP 02.06 did not allow participants to receive any magazines, Revised 02.06 allows magazines so long as they are not: (1) detrimental to the rehabilitation program; (2) do not approve or promote alcohol or drug use; and (3) are not sexually explicit. These limitations are much more closely tailored to the TDCJ's rational for limiting the reading material available to Program participants. Stauffer fails to provide any argument as to why Revised 02.06 is constitutionally impermissible. Given this change in policy, Stauffer's claim for injunctive relief is moot.[6]

## B.

We now turn to Stauffer's claims for monetary relief. Stauffer did not suffer physical injury in connection with his constitutional claims, and is therefore precluded from recovering compensatory damages. 42 U.S.C. § 1997e(e); *see also Mayfield v. Texas Dep't of Criminal Justice*, 529 F.3d 599, 605–06 (5th Cir. 2008); *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005) (applying § 1997e(e) to bar prisoner's claim for damages brought under § 1983

---

[6] TDCJ's change in policy likewise moots Stauffer's request for a declaratory judgment. *See Connell v. Shoemaker*, 555 F.2d 483, 486 (5th Cir. 1977) ("[T]he question of the mootness *vel non* of appellants' claim under the Declaratory Judgment Act, 28 U.S.C. § 2201, becomes whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issue of a declaratory judgment." (internal quotation marks and citations omitted)).

alleging a First Amendment violation).[7]  An inmate's allegation that his personal property was lost, confiscated, or damaged does not state a claim under 42 U.S.C. § 1983, even when prison officials acted intentionally.  *Hudson v. Palmer*, 468 U.S. 517 (1984); *Geiger*, 404 F.3d at 374.  In Texas, when an inmate's property is taken without compensation, his remedy is in state court, not federal court.  *Thompson v. Sleele*, 709 F.2d 381, 383 (5th Cir. 1983).

Stauffer is likewise not entitled to punitive damages.  Neither a state nor a state official sued in an official capacity is a "person" under § 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 92 (1989); *see also Oliver v. SCali*, 276 F.3d 736, 742 (5th Cir. 2002).  Accordingly, Stauffer's claims for monetary damages against Defendants in their official capacities were properly dismissed by the district court.

Defendants are also immune from damages in their individual capacity because they did not violate Stauffer's clearly established constitutional rights.  "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (citation omitted).  "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'  We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft*, 131 at 2083 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  We need not decide whether Stauffer's rights were actually

---

[7] Stauffer can, however, recover nominal and punitive damages without a showing of physical injury.  *See Mayfield*, 529 F.3d at 606.

No. 12-20195

violated, because even if they were, Stauffer has not proven that those rights were clearly established at the time of the alleged violations.

i.

Prisoners do not lose all constitutional rights once they pass beyond prison walls, but they retain only those First Amendment rights which are not inconsistent with their status as prisoners or with the legitimate penological objectives of the prison system. *See Turner v. Safley*, 482 U.S. 78, 84 (1987); *see also Hudson v. Palmer*, 468 U.S. 517, 523 (1984). Because courts are "'ill equipped' to deal with the difficult and delicate problems of prison management, [the Supreme Court] has afforded considerable deference to the determinations of prison administrators." *Thornburgh v. Abbott*, 490 U.S. 401, 407–08 (1988). "[P]rison administrators . . . , and not the courts, [are] to make the difficult judgments concerning institutional operations." *Id.* at 409 (quoting *Turner,* 482 U.S. at 89). Furthermore, "prison officials may well conclude that certain proposed interactions, though seemingly innocuous to laymen, have potentially significant implications for the order and security of the prison." *Id.* at 407. Based on these considerations, the Supreme Court has rejected a "heightened" scrutiny standard for regulations that are "centrally concerned with the maintenance of order and security within prisons" and instead applies a reasonableness standard. *Id.* at 409–10. A prison regulation that "impinges on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests." *Turner*, 428 U.S. at 88.

The *Turner* Court set out four factors to consider in determining the reasonableness of the regulation at issue: (1) whether there is a rational relationship between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether the inmate has an available alternative means of exercising the rights; (3) the impact of accommodation on other inmates, guards, and allocation of prison resources; and (4) the presence

11

or absence of easy and obvious alternative means to accommodate the right. *Turner*, 482 U.S. at 89–91; *see also Prison Legal News v. Livingston*, 683 F.3d 201, 214 (5th Cir. 2012). "'[R]ationality is the controlling factor,' and the remaining factors are best understood as indicators of rationality." *Prison Legal News*, 683 F.3d at 214–215 (quoting *Mayfield*, 529 F.3d at 607). The prisoner has the burden of demonstrating that there is no rational relation to a legitimate penological interest, and the prison does not have to prove that the censored materials would cause problems. *Id.* at 216. The prison policy does not need to be the least restrictive means to accomplish the policy, but only generally necessary to a legitimate governmental interest. *See Thornburgh*, 490 U.S. at 410–11. The prison policy may be struck down only if its relationship to the government objective is "so remote as to render the policy arbitrary or irrational." *Freeman v. Texas Dep't of Crim. Justice*, 369 F.3d 854, 861 (5th Cir. 2004) (citing *Turner*, 482 U.S. at 89–90).

Stauffer has not show that SOTP 02.06 was irrational under existing precedent. First, Stauffer failed to prove that SOTP 02.06 is not "legitimate and neutral." *Thornburgh*, 490 U.S. at 414. To fulfill the neutrality requirement, "the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression." *Prison Legal News*, 683 F.3d at 215 (quoting *Thornburgh*, 490 U.S. at 415). A regulation can be considered neutral even if it is content or viewpoint specific. *See id.* at 218 n.6; *see also Thornburgh*, 490 U.S. at 415–16. SOTP 02.06 itself stated that its purpose was to "facilitate treatment" and Stauffer has not shown that the TDCJ had any ulterior motive in promulgating the rule. Defendants argue that the content-based distinctions that SOTP 02.06 made for sexually explicit materials were neutral because they were drawn on the basis of their potential implications for SOTP. The purpose of the distinction that SOTP 02.06 drew between newspapers and religious materials and all other publications was also

arguably related to the Program's rehabilitation purpose. TDCJ determined that newspapers and religious materials were "bare essentials," but concluded that other publications would further distract participants from focusing on the Program. Even though Defendants have not articulated the clearest explanation for these distinctions, Stauffer bears, and fails to meet, the burden of showing that SOTP 02.06 was not neutral.[8]

Second, Stauffer fails to show that SOTP 02.06 was not rationally related to TDCJ's legitimate interest in sex-offender rehabilitation. In *McKune v. Lile*, the Supreme Court recognized that Kansas had an undeniable interest in rehabilitating sex-offenders. 536 U.S. 24, 32–33, 48 (2002). Defendants likewise argue that sex-offender treatment programs are an important rehabilitation goal in the prison systems, and that SOTP 02.06 placed restrictions on reading material in order to facilitate treatment by preventing distractions. Defendants submitted affidavits explaining why some of the magazines Stauffer requested undermined the goals of SOTP. These statements are not, as Stauffer asserts, "bare conclusions" or "mere *ipse dixit* of a purported expert with no probative value." Instead, they are the professional judgments by prison officials tasked with overseeing this Program, and are therefore entitled to deference. *See Beard*, 548 U.S. at 529–30 (Courts "must distinguish between evidence of disputed facts and disputed matters of

---

[8] Stauffer also argues that SOTP 02.06 fails the neutrality requirement as applied to him because the "regulations fairly invited prison officials and employees to apply their own personal prejudices and opinions as standards for prisoner mail censorship." We addressed a very similar question in *Prison Legal News*. 683 F.3d at 220. There, we determined that the censoring rule was neutral despite inconsistent results stemming from "the enormous diffusion of responsibility for making initial censorship decisions" by "roughly 500 mailroom employees." *Id.* As we explained, decisions about which publications the prisoners could and could not read are "precisely the types of subjective assessments that usually fall within prison administrators' discretion" and we concluded that the inconsistencies were not enough to defeat the reasonableness of the practice. *Id.* at 221. SOTP 02.06 is likewise neutral as applied to Stauffer not withstanding the fact that SOTP 02.06 allows prison staff to exercise their discretion in determining which publications participants could receive.

professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities.").

Stauffer contends that SOTP 02.06 was irrational because it allowed alternative channels for participants to receive "distracting" materials and does not justify its ban on the particular magazines that Stauffer ordered. Stauffer cites two pre-*Turner* cases to argue that SOTP 02.06 was patently ineffective at achieving its stated purpose, and thus violated his rights.[9] *See Mann v. Smith,* 796 F.2d 79, 81–83 (5th Cir. 1986); *Green v. Ferrell,* 801 F.2d 765, 772 (5th Cir. 1986)).[10] Specifically, Stauffer argues that SOTP 02.06 was underinclusive because it banned some distracting materials but not others. Even assuming the applicability of *Mann* and *Green*, Stauffer has not shown that the contours of his right to receive the magazines was "sufficiently clear" that every "reasonable official would have understood that what he is doing

---

[9] Based on our decision in *Prison Legal News*, SOTP 02.06 may still be considered rational even if Stauffer had access to a number of books and magazines in the library that could also distract him from focusing on the Program. *See Prison Legal News*, 683 F.3d at 216. Nor are Defendants required to explain why the publications allowed by SOTP 02.06 (newspapers and religious materials) are less distracting than the magazines Stauffer requested; Defendants only need to articulate a valid, rational reason related to the penological interest in rehabilitation for excluding these specific car magazines. *Id.* Defendants offer several: "First all vocational programs must be completed prior to entering the SOTP. Second, such publications often contain sexually explicit material which strongly undermines the goals of the program. . . . [Third, i]t is of the highest priority that participants enrolled in the Sex Offender Treatment Program use those 18 months to their utmost and not be allowed to engage in unnecessary distractions." Each of these reasons could independently justify the Defendants' decisions to deny the magazines to Stauffer. So long as their decisions are individually justifiable, prison officials are entitled to deference when selecting between which publications will and will not be confiscated. *Id.*

[10] In *Mann*, we overturned a prison regulation that banned magazines and newspapers in order to prevent prisoners from starting fires and clogging toilets. There, we explained that the policy was underinclusive and an "exaggerated response" because it did not ban a number of other materials (such as books, toilet paper, sheets, and blankets) that could also be used to start fires or clog toilets. *Mann*, 796 F.2d at 81–83. In *Green* the prison regulation banned newspapers and we held that the case was factually indistinguishable from *Mann* and thus overturned the regulation. *Green*, 801 F.2d at 772 ("If anything, the Adams County rule is even more underinclusive because it prohibits newspapers but not magazines.").

violates that right." *Ashcroft*, 131 S. Ct. at 2083 (internal quotation marks and citations omitted).  In *Mann*, we contrasted the regulation at issue with the "carefully tailored restriction" in *Bell v. Wolfish*, 441 U.S. 520, 550 (1979), where the Supreme Court upheld a prohibition against receipt of hardback books unless mailed directly from publishers, book clubs, or bookstores.  *Mann*, 796 F.2d at 82.

SOTP 02.06 was likewise much more carefully tailored to meet the Program's goal of rehabilitation than were the bans in *Mann* and *Green*, which denied prisoners access to *all* magazines and/or newspapers.  Stauffer admits that he still had access to a wide range of publications.  In addition, SOTP 02.06 only applied to participants for the limited 18-month period that they were in SOTP, while the bans in *Mann* and *Green* applied across the board to all inmates during the entire duration of their incarceration.  *Id.* at 81.  Given these differences, we cannot say that existing precedent "placed the statutory or constitutional question beyond debate."  *Ashcroft*, 131 S. Ct. at 2083.

Stauffer has not shown that SOTP 02.06 was irrational, and has thus failed to prove that our binding precedent at the time of the alleged violation made the contours of his right sufficiently clear that Defendants would have understood that they were violating his First Amendment rights.  *See Ashcroft*, 131 S. Ct. at 2083.  His First Amendment claims therefore fail.

ii.

We now turn to Stauffer's rights under the Equal Protection Clause and likewise conclude that Defendants did not violate his clearly established rights. Stauffer contends that SOTP 02.06 violated his Equal Protection rights because it targeted convicted sex-offenders as a specific class of offenders.  He argues that TDCJ lacked a reasonable justification for treating SOTP participants differently under SOTP 02.06, and that the rule was motivated by "an indignant animus towards sex offenders."  "A classification that categorizes inmates based

No. 12-20195

on the type of criminal offenses for which they have been convicted does not implicate a suspect class." *Wattlin v. Fleming*, 136 F.3d 1032, 1036 (5th Cir. 1998) (citation omitted). As a result, any classification of convicted sex-offenders is only subject to a rational basis review. *Id.* at 1036–37.

The district court applied the rational basis test and granted summary judgment to Defendants with respect to this claim because the affidavits they submitted with their summary judgment motion established that sexually explicit materials would undermine the Program. In addition, the district court determined that the policy limiting the participants' distractions while in the Program was rationally related to the goal of increasing the participants' focus on the Program. As we have already noted, SOTP 02.06 is rationally related to this legitimate penalogical interest in rehabilitation. It therefore satisfies the rational basis test and Stauffer's Equal Protection claim fails.

iii.

Stauffer next argues that Defendants deprived him of due process when they confiscated his magazines. Once again, Stauffer has failed to prove that Defendants violated his clearly established rights because the TDCJ grievance process provided Stauffer with due process. Stauffer could, and did, use the TDCJ grievance system to claim that he was wrongly denied the car magazines. His Step 2 Grievance Report indicates that Stauffer was able to make his claims, and that prison administrators responded by investigating his claims and giving a written justification for why he was not entitled to relief. The district court therefore correctly ruled that Stauffer failed to state a Due Process claim. *See Geiger*, 404 F.3d at 374 ("Geiger does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.").

16

No. 12-20195

In sum, Stauffer did not have a clearly established right to receive the magazines at the time that they were confiscated.  He has not pointed to any case law indicating that Defendants should have reasonably known that he had a right to the magazines.  His claim for damages therefore fails.[11]

IV.

For the foregoing reasons we AFFIRM the dismissal of Stauffer's case.

---

[11] There is no relief that Stauffer is entitled to, as his claims for injunctive relief are moot and his claims for damages are without merit.  Accordingly, we  do not reach his other claims.  Stauffer may still file a separate suit for his retaliation claims.

17