# United States Court of Appeals for the Fifth Circuit

---

No. 25-40165

---

United States Court of Appeals
Fifth Circuit

**FILED**

February 9, 2026

Lyle W. Cayce
Clerk

Jerry Lee Canfield,

*Plaintiff—Appellant*,

*versus*

Bryan Collier, *Executive Director, TDCJ*; Timothy Fitzpatrick, *Dir. Classification and Record, TDCJ*; Eric Guerrero, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*; Deanna R. Frances, *Program Supervisor III*; Jingle M. Meeks, *Program Supervisor, TDCJ*; Patrick L. O'Daniel, Chairman, Texas Board of Criminal Justice; Oscar Mendoza, *Deputy Executive Director, TDCJ*; J. Back, *PS I, TDCJ*; Karen Hall, *Deputy Chief of Staff, TDCJ*; Dan Patrick, *Lieutenant Governor*,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:24-CV-60

---

Before Stewart, Graves, and Oldham, *Circuit Judges*.

Per Curiam:[*]

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-40165

After serving ten years of incarceration in the Texas Department of Criminal Justice ("TDCJ") system, Jerry Lee Canfield requested a custodial reclassification from "G3" to "G2" status. When he made the requests, Canfield was informed that, pursuant to a policy implemented after he entered the TDCJ system, his conviction for continuous sexual abuse of a child under Texas Penal Code section 21.02 made him ineligible for reclassification at that time. Canfield brought suit against Lieutenant Governor Dan Patrick and TDCJ officials and staff including Brian Collier, Timothy Fitzpatrick, Eric Guerrero, Deanna R. Frances, Jingle M. Meeks, Patrick L. O'Daniel, Oscar Mendoza, J. Back, and Karen Hall (all collectively, "TDCJ Staff"). Canfield challenges the policy that made him ineligible for G2 status and TDCJ Staff's application of that policy to him as violations of his right to equal protection. Canfield also argues that the district court judge displayed impermissible bias against him and held him to a higher standard than that required for pro se parties. For the following reasons, we AFFIRM.

## I

## A

In 2013, Canfield was convicted of continuous sexual abuse of a child under fourteen and sentenced to fifty years of imprisonment, pursuant to Texas Penal Code section 21.02. *Canfield v. State*, No. 07-13-00161-CR, 2015 WL 739667, at *1 (Tex. App. Feb. 19, 2015); *see also Canfield v. Lumpkin*, 998 F.3d 242, 244 (5th Cir. 2021) (appeal from denial of writ of habeas corpus). The mandatory minimum for Canfield's crime of conviction as provided in section 21.02 was part of an enhanced statutory mandatory minimum scheme

No. 25-40165

for sexual offenders passed as a part of House Bill 8 of the 80th Texas Legislature (2007), which is colloquially referred to as "Jessica's Law."[1]

Canfield alleged that when he entered the TDCJ system, he was told that after serving ten years, he would be reclassified from G2 status to G3 status. As the magistrate judge observed, G2 status is more favorable than G3 status, and makes inmates eligible for additional housing and work options. However, in 2018, after several incidents involving the murders of Texas correctional officers at the hands of inmates, "Governor Greg Abbott instructed TDCJ to 'take all necessary measures to ensure the safety of their staff.'" Pursuant to that instruction, TDCJ took several steps, including by implementing a new custodial classification policy (the "G3 Policy"):

> While some custody designations may be overridden, others are mandatory. . . . Offenders that have been convicted under Jessica's [L]aw and were given a life sentence are considered to be the equivalent of life without parole. Those offenders will not be eligible for a custody less restrictive than G3 for their entire incarceration. Additionally, offenders that have been convicted under Jessica's [L]aw and were given sentence[s] less than life, will not be eligible for a custody less restrictive than G3 until five (5) years from their discharge date. Once that date has been reached, the offenders become[] eligible for G2 custody.[2]

---

[1] The magistrate judge did not find, and we have not found, a certain definition of what it means to be "convicted under" or "sentenced pursuant to" Jessica's Law. We herein refer to all inmates incarcerated for crimes for which the mandatory minimums were prescribed by Jessica's Law as inmates "sentenced under" or "sentenced pursuant to" Jessica's Law.

[2] Neither party provided the court with a copy of the G3 Policy at the motion to dismiss stage. However, Canfield included a recitation of the policy in his pleadings and TDCJ Staff do not contest his recitation's accuracy.

Canfield alleges that pursuant to the initial classification policy, he became eligible for G2 status as of February 12, 2022. After that time, he requested information about his hearing and reclassification but was informed that he was ineligible for G2 reclassification and would not become eligible until 2057. Canfield filed several requests and grievances but did not receive a hearing and was not reclassified.

**B**

On February 16, 2024, Canfield filed suit against TDCJ Staff in their official and individual capacities, bringing, *inter alia*, equal protection claims that (1) he and similarly situated others received disparate treatment based on the new G3 Policy, and (2) he "and others" were denied educational, vocational, and programmatic opportunities and privileges as a result of the new G3 policy.[3] Canfield argued that as a result of Governor Abbott's instruction to TDCJ, each named defendant took part in creating the G3 Policy, refusing to investigate or change the G3 Policy, and/or classifying him pursuant to the G3 Policy without a hearing. Canfield sought declaratory and injunctive relief, including modification of the G3 Policy.

TDCJ Staff filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). Among other things, TDCJ Staff argued that Canfield's lawsuit was untimely. They also argued that Canfield's equal protection claims failed because he did not allege a viable "class-of-one" and his claim regarding equal opportunity was otherwise meritless.

---

[3] Canfield also brought claims that: the denial of promotion to G2 status after ten years violated his due process rights; the denial of a custodial classification promotion hearing violated his due process rights; the G3 Policy was an ex post facto law; and the G3 Policy constitutes cruel and unusual punishment.

No. 25-40165

The magistrate judge recommended dismissal. As to Canfield's equal protection claims, she held that Canfield had not identified any discriminatory intent with respect to the G3 Policy, and that there was a rational relationship between the limit on his custodial classification and the government's need to restrict privileges for sexual offenders. She explained that although Canfield "insists that the G3 [P]olicy provides no incentive 'to do good' while in prison, such argument does not identify a constitutional violation." She then concluded that Canfield could not cure the deficiencies in his suit through amended pleadings because even if he could state a claim, his suit would be untimely based on the statute of limitations.

Canfield filed objections to the report and recommendation. In his objections, Canfield contended that in addition to challenging the G3 Policy as a whole, he also challenged the unequal application of the policy between himself and other inmates sentenced pursuant to Jessica's Law—arguing that others received the benefit of the G3 Policy but he did not. The district court overruled Canfield's objections, adopted the report and recommendation, and dismissed the suit.[4] Canfield timely appealed.

## II

We have jurisdiction over this appeal as an appeal of a final judgment of the district court. 28 U.S.C. § 1291. A district court's order on a motion to

---

[4] Canfield objected to the magistrate judge's conclusion that his suit was untimely. The district court overruled that objection, reasoning that the magistrate judge did not make its decision on that basis; rather, the magistrate judge ruled on Canfield's claims on the merits and held that the deficiencies in his claims could not be cured. On appeal, TDCJ Staff argue again that Canfield's claims were untimely. Because the district court did not rule on the timeliness of Canfield's suit but merely agreed with the magistrate judge's determination that the deficiencies in Canfield's pleadings could not be cured, it is unclear whether the district court has passed on this issue. Nonetheless, because we are a court of review, and because Canfield's claims are otherwise meritless, we pretermit discussion of this issue on appeal.

dismiss is reviewed de novo. *McKay v. LaCroix*, 117 F.4th 741, 746 (5th Cir. 2024) (citing *Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247, 253 (5th Cir. 2021)). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Because Canfield is a pro se litigant, we liberally construe his pleadings and briefing in conducting this analysis. *Propes v. Quarterman*, 573 F.3d 225, 228 (5th Cir. 2009).

## III

### A

Canfield brings three equal protection claims regarding the passage and application of the G3 Policy. The Equal Protection Clause of the Fourteenth Amendment states that "[n]o [s]tate shall . . . deny to any person . . . the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "The clause 'does not forbid classifications' because 'most laws differentiate in some fashion between classes of persons.'" *Harris v. Hahn*, 827 F.3d 359, 365 (5th Cir. 2016) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). "It simply keeps governmental decision makers from treating differently persons who are in all relevant respects alike." *Id.* (quoting *Nordlinger*, 505 U.S. at 10).

Whether the plaintiff's claim involves a suspect class or fundamental right determines which level of scrutiny we apply to their claims. When a statutory classification "do[es] not implicate suspect classes or fundamental rights," we apply rational basis review. *Id.* "A classification that categorizes inmates based on the type of criminal offenses for which they have been convicted does not implicate a suspect class." *Stauffer v. Gearhart*, 741 F.3d 574, 587 (5th Cir. 2014) (citation modified). Therefore, Canfield's

arguments, which all center on his crime of conviction and associated custodial classification, are subject to rational basis review. *See id.*

Rational basis review requires only that there is "a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Duarte v. City of Lewisville*, 858 F.3d 348, 354 (5th Cir. 2017) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). This review "begins with a strong presumption of constitutional validity." *Id.* (quoting *Malagon de Fuentes v. Gonzales*, 462 F.3d 498, 504 (5th Cir. 2006)). Thus, under rational basis review, classifications are given broad deference and "will survive 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Harris*, 827 F.3d at 365 (quoting *Heller*, 509 U.S. at 320). "'The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it,' . . . whether or not the basis has a foundation in the record." *Heller*, 509 U.S. at 320–21 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)).

Canfield brings both class-based equal protection claims and a class-of-one equal protection claim. Applying rational basis review, we consider each in turn.

No. 25-40165

**1**

Canfield brings two class-based equal protection claims against the G3 Policy.[5] First, he argues that the G3 Policy impermissibly imposes differential treatment on inmates sentenced pursuant to Jessica's Law ("Jessica's Law Inmates") than other inmates. Second, he argues that in applying the G3 Policy, TDCJ Staff apply it differently to subsets of Jessica's Law Inmates. That is, he argues that they improperly apply the policy to those sentenced under section 21.02 but not section 22.021 of the Texas Penal Code.

**a**

Canfield's first claim is that the G3 Policy imposes differential treatment on Jessica's Law Inmates as compared to inmates convicted under other statutes. However, Canfield has not met his burden of showing that difference in treatment is irrational. *See Duarte*, 858 F.3d at 355. Inmates sentenced pursuant to Jessica's Law are those sentenced for sexual offenses. This court has previously held that differential treatment for sexual offenders was rationally related to the state's "undeniable interest in rehabilitating sex-offenders." *Stauffer*, 741 F.3d at 585 (citing *McKune v. Lile*, 536 U.S. 24, 32–33 (2002) (describing a state's interest in rehabilitating such offenders)). Thus, even to the extent that the G3 Policy leads to differential treatment for inmates sentenced under Jessica's Law, Canfield has failed to meet his

---

[5] Canfield's brief largely focuses on his "class-of-one" claim, discussed *infra* III.A.2. However, Canfield also argues that the G3 Policy leads to unconstitutional, disparate treatment for all sex offenders and specifically, all sex offenders sentenced pursuant to Texas Penal Code section 21.02. TDCJ Staff respond to these class-based arguments in their principal brief. Given that briefing and the liberal construction afforded to Canfield's pro se briefing, it is appropriate for us to consider his class-based claims here. *See Propes v. Quarterman*, 573 F.3d 225, 228 (5th Cir. 2009).

burden of showing that there is no rational relationship between that differential treatment and the state's interest in rehabilitating sex offenders.[6]

**b**

Canfield's second claim is that TDCJ Staff's enforcement of the G3 Policy violates his right to equal protection because the policy is selectively enforced. According to Canfield, TDCJ Staff enforce the policy against inmates sentenced under Texas Penal Code section 21.02, but do not enforce the policy against inmates sentenced under Texas Penal Code section 22.021(f).

The mandatory minimums for both sections 21.02 and 22.021(f) were introduced by Jessica's Law. Section 22.021 provides the elements and mandatory minimum sentence for individuals convicted of aggravated sexual assault, which includes sexual offenses committed against a minor. TEX. PENAL CODE § 22.021(a)(1)(B). By contrast, section 21.02 (Canfield's statute of conviction) provides the elements and mandatory minimum sentence for individuals convicted of "continuous sexual abuse of [a] young child or disabled individual." TEX. PENAL CODE § 21.02. An individual commits continuous sexual abuse under this section if they commit "two or more acts of sexual abuse" against a child over a thirty-plus-day period, including but not limited to "aggravated sexual assault under [s]ection 22.021," or "sexual assault under [s]ection 22.011." *Id.* § 21.02(b)–(c).

In *Duarte*, this court addressed an equal protection challenge that similarly alleged differential treatment between two subsets of sexual

---

[6] Canfield argues that the safety incidents that ultimately led to passage of the G3 Policy did not involve inmates incarcerated for sexual offenses. However, the fact that the G3 Policy was passed in response to general concerns about prison staff safety does not limit TDCJ to only policies directly correlating to that concern.

offenders. 858 F.3d at 354. In that case, the plaintiff challenged an ordinance that applied to one group of sexual offenders ("those subject to community supervision"), but did not apply to another group of sexual offenders ("those who [we]re not subject to community supervision"). *Id.* We rejected plaintiff's challenge to the ordinance's classification scheme, emphasizing that our review "merely require[d] 'that a purpose may conceivably or may reasonably have been the purpose and policy' of the relevant governmental decisionmaker.'" *Id.* at 355 (quoting *Nordlinger*, 505 U.S. at 11). We explained that was true even if the decisionmaker had not "actually articulate[d] at any time the purpose or rationale supporting the classification." *Id.* (quoting *Nordlinger*, 505 U.S. at 15)*; see also Reid v. Rolling Fork Pub. Util. Dist.*, 854 F.2d 751, 754 (5th Cir. 1988) ("As long as there is *a* conceivable rational basis for the official action, it is immaterial that it was not *the* or *a* primary factor in reaching a decision or that it was not *actually* relied upon by the decisionmakers or that some *other* nonsuspect irrational factors may have been considered.").

Canfield fails to meet his burden of showing that there is no rational basis for differential treatment of inmates sentenced under sections 21.02 and 22.021. We accord "[g]reat deference . . . to prison officials in their determination[s] of custodial status." *Butler v. S. Porter*, 999 F.3d 287, 296 (5th Cir. 2021); *see also id.* ("[A]bsent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life as a prisoner, will never be a ground for a constitutional claim." (quoting *Pichardo v. Kinker*, 73 F.3d 612, 612 (5th Cir. 1996))). Here, there is reason to believe that there is a rational reason for differential treatment of inmates sentenced pursuant to sections 21.02 and 22.021—particularly given the statutes' differences in covered conduct. Indeed, section 22.021 includes aggravated sexual assault of a minor, while section 21.02 includes *repeated* aggravated

sexual assault (or other sexual offenses) of a minor or a disabled individual. Tex. Penal Code §§ 22.021, 21.02.

Accordingly, Canfield's class-based equal protection claims fail.

**2**

Canfield also brings a class-of-one challenge, arguing that the G3 Policy is being applied differently to him than to other similarly situated inmates. We review class-of-one equal protection claims under a "two-prong test." *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir. 2012). "[T]he plaintiff must show that (1) he . . . was intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment." *Id.* To determine who constitutes a similarly situated comparator in the equal protection context, we must "consider the full variety of factors that an objectively reasonable . . . decisionmaker would have found relevant in making the challenged decision." *Id.* at 234 (citation modified). This is a case-specific inquiry that is not "susceptible to rigid, mechanical application." *Id.* at 233.

Canfield has failed to identify any similarly situated comparators. In offering comparators, Canfield offers comparisons to inmates convicted pursuant to sections 22.021(f), 22.021(a)(1)(B), 22.011, and 19.03(a)(2) of the Texas Penal Code. He does not identify differential treatment from any inmates also sentenced pursuant to section 21.02. As explained *supra*, there may be reason to treat two sexual offenders differently based on their underlying crime of conviction. Because none of the comparators Canfield alleged were sentenced pursuant 21.02 for continuous abuse of a child, which involves two or more instances of sexual abuse over the course of thirty days or more, we cannot say that Canfield has met his burden of establishing that any of the inmates he named were similarly situated. *See* Tex. Penal

No. 25-40165

CODE §§ 22.021, 21.02. Accordingly, Canfield's class-of-one equal protection claim also fails.

## B

Finally, Canfield argues that the district court exhibited impermissible bias against him because of his sex offender status and held him to a higher standard than the law requires for pro se litigants. As to his claim regarding judicial bias, Canfield seems to take issue with the magistrate judge's statement regarding the high recidivism rates for sexual offenders. However, the statement he quotes from the magistrate judge's report and recommendation is a direct quote from the Supreme Court's statement in *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1, 4 (2003). This is not evidence of impermissible bias. *See United States v. Scroggins*, 485 F.3d 824, 830 (5th Cir. 2007).

Further, although this court has long recognized that pro se litigants are "afforded liberal construction," Canfield's bare assertion that the district court did not afford him that construction is insufficient. *Propes*, 573 F.3d at 228 (quoting *Johnson v. Quarterman*, 479 F.3d 358, 359 (5th Cir. 2007)). Canfield does not offer any evidence or examples of his being held to a higher standard, or of the magistrate or district court judges refusing to engage in liberal construction of his pleadings and briefs. Thus, his claims regarding purported bias and the standard applied to his pro se pleadings are without merit. *Id.*

## IV

For the foregoing reasons, the judgment of the district court is AFFIRMED.[7]

---

[7] All pending motions are DENIED.